OPINION OF THE COURT
M. Dolores Denman, J.
Plaintiff has moved for summary judgment on its action for specific performance and damages in the amount of $5,000. Defendants Michael and Kathleen McCarthy and the estate of Anna Marie McCarthy have cross-moved for summary judgment dismissing the complaint, declaring the option to purchase a portion of their land void, and clearing title to that parcel. Defendants have also interposed a counterclaim against plaintiff, in which the estate of Ruth L. Robb, its coexecutors and individual beneficiaries of that *708 estate, the law firm of Hodgson, Russ, Andrews, Woods & Goodyear and two attorneys of that firm were joined. The additional joined parties have moved to dismiss the counterclaim so far as it pertains to them for failure to state a cause of action.[1]
There is no controversy as to the essential facts. By warranty deed dated July 3, 1954 Ruth L. Robb (Robb) conveyed a portion of her property (Parcel A) to Palma V. Tripi (Tripi). Parcel A was bounded on the north by the remaining portion of Robb’s property located at 160 Windsor in the City of Buffalo (Parcel B). That deed incorporated the following option to purchase a strip of land located in Parcel B along the boundary (Option No. 1).
“The party of the first part hereby grants unto the party of the second part, her heirs, executors or assigns, an irrevocable option to buy and receive good and marketable title to all or any part of a twenty (20) foot strip of land extending along the entire northerly boundary of the premises hereinabove described subject to the same utility easement and building restrictions hereinabove contained, provided, however, that in the event the party of the first part shall, at any time hereafter, receive a bona fide written offer for the purchase of her entire premises at 160 Windsor Avenue including said twenty (20) foot strip, or for her entire premises at 160 Windsor Avenue less said twenty (20) foot strip, then, and in that event, upon written notice thereof by said party of the first part to the party of the second part, said option shall cease and determine upon the expiration of thirty (30) days from the date of said written notice unless prior thereto said party of the second part shall have given written notice of her exercise of said option to said party of the first part. During said period of time no struc *709 turcs or other improvements shall be placed or erected upon said twenty (20) foot strip. The price to be paid for said twenty (20) foot strip shall be the market value thereof at the time of purchase, provided, however, that in determining said market value, no value shall be assigned to any structures or improvements, all or any part of which may be located thereon, excepting only the driveway and stone wall now on the premises. In case the parties are unable to agree as to the market value of the property at the time of purchase, then such value shall be determined by an appraiser appointed by the party of the first part, an appraiser appointed by the party of the second part, and a third appraiser appointed by the other two. The fees of each of the first two appraisers shall be paid by the party making the appointment; the fee of the third appraiser shall be paid equally by the parties hereto, their heirs, executors and assigns. The covenants hereinbefore in this paragraph contained shall bind the heirs, executors, administrators and assigns of the parties hereto.”
By warranty deed dated December 30, 1963 Tripi conveyed Parcel A to plaintiff. That deed also transferred all rights of Tripi to Option No. 1.
Upon the death of Robb, Parcel B was included in her estate. Subsequently, the estate of Robb and defendants entered into negotiations for the sale of the premises which culminated in a purchase offer executed by defendants dated May 22, 1976 and accepted May 25, 1976. By letter dated August 10,1976 James M. Wadsworth, the attorney for the estate of Robb, notified plaintiff of the purchase offer in accordance with the terms of Option No. 1. An executor’s deed dated August 19, 1976 for Parcel B was given the defendants. On September 6, 1976, by letter of Anthony L. Dutton, an attorney and member of plaintiff’s board of trustees, plaintiff exercised its option and filed the same with the County Clerk.
Plaintiff and defendants thereafter entered into negotiations concerning the strip of land covered by the option. An agreement was reached under which defendants granted plaintiff a new option to purchase the strip (Option No. 2) essentially embodying the same terms as Option No. 1:
*710 “1. The parties of the first part hereby grant unto the party of the second part, its successors and assigns, an irrevocable option to buy and receive good and marketable title to all or any part of a 20 foot strip of land comprising and extending along the entire southerly boundary of the premises at 160 Windsor Avenue, Buffalo, New York, as more particularly described in Schedule A annexed hereto and made a part hereof, subject to the same utility easements and building restrictions as set forth in said deed recorded in Liber 5577 of Deeds at page 276 in the Erie County Clerk’s office, provided, however, that in the event the parties of the first part shall, at any time hereafter, receive a bona fide written offer for the purchase of their entire premises at 160 Windsor Avenue including said 20 foot strip, or for their entire premises at 160 Windsor Avenue less said 20 foot strip, then and in that event, upon written notice thereof by said parties of the first part to the party of the second part, said option shall cease and determine upon the expiration of 30 days from the date of said written notice unless prior thereto said party of the second part shall have given written notice of its exercise of said option to said parties of the first part. During said period of time, no structures or other improvements shall be placed or created upon said 20 foot strip. The price to be paid for said 20 foot strip shall be the market value thereof at the time of purchase, provided, however, that in determining said market value, no value shall be assigned to any structures or improvements, all or any part of which may be located thereon, excepting only the driveway and stone wall now on the premises. In case the parties are unable to agree as to the market value of the property at the time of purchase, then such value shall be determined by an appraiser appointed by the parties of the first part, an appraiser appointed by the party of the second part and a third appraiser appointed by the other two. The fees of each of the first two appraisers shall be paid by the party making the appointment; the fee of the third appraiser shall be paid equally by the parties hereto.”
Plaintiff agreed to withdraw its election under Option No. 1 and the agreement regarding Option No. 2 dated September 30, 1976 was filed on October 1, 1976. Defendants filed *711 the executor’s deed to Parcel B on that same date.
By letter from Dutton dated June 5,1978 plaintiff elected to purchase the strip of land pursuant to the terms of Option No. 2. Defendants, by letter of Michael L. McCarthy dated June 8, 1978, rejected that election. Plaintiff then commenced the underlying action for specific performance and damages; defendants answered and interposed the counterclaim (which is now inclusive of the “third-party action”).
Defendants raise six affirmative defenses as bases for judgment in their favor. The first defense asserting that the complaint and affidavits submitted by plaintiff fail to state a cause of action is without merit. Plaintiff has established the existence of Option No. 2, its election to exercise its right to purchase the strip of land under that option, and the refusal of defendants to deed over the property or to submit to the value assessment procedure enunciated in the option agreement. Once plaintiff notified defendants of its election to exercise its option, there existed a binding contract for the sale of realty which may be enforced by specific performance. (Trustees of Hamilton Coll. v Roberts, 223 NY 56; Rockland-Rockport Line Co. v Leary, 203 NY 469; 62 NY Jur, Vendor and Purchaser, § 182, pp 472-473.) Accordingly, plaintiff has established a prima facie case and is entitled to summary judgment unless defendants come forward with evidence which either raises a triable issue of fact or establishes a meritorious defense entitling defendants to judgment. (See Zuckerman v City of New York, 49 NY2d 557, 562.)
The major defense urged by defendants is that both Options No. 1 and No. 2 are void as violating the rule against perpetuities. Options to purchase real property are interests that must meet the tests of that rule in order to be valid and enforceable. (See Bergin and Haskell, Preface to Estates in Land and Future Interests, pp 211-212; Restatement, Property, § 393; 5 Powell, Real Property, parts 771 [1], [2] ; Ann., 66 ALR3d 1294; see, also, Ann., 40 ALE 3d 920 [pre-emptive rights].) Option No. 2 was created subsequent to the enactment of EPTL 9-1.1 and therefore must meet the requirements of both the rule limiting *712 suspension of an absolute power of alienation and the rule limiting remoteness of vesting. There is no violation of the former inasmuch as at all times plaintiff or its assigns and defendants or those taking Parcel B from them could have acted together and conveyed a fee absolute in Parcel B. (EPTL 9-1.1, subd [a], par [1]; Blankman v Great Western Food Distrs., 57 Misc 2d 754.)
It must next be determined whether the interest would vest within the applicable period required by EPTL 9-1.1 (subd [b]). The fact that plaintiff exercised the option within two years is of no moment. “[EPTL 9.1-1] does not change the principle that a limitation which may possibly violate the rule against perpetuities does violate the rule. The section does not adopt a ‘wait and see’ approach. Limitations stand or fall as of the effective date of the creating instrument” (Rohan, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.1, 1980-1981 Supp, p 149; see, also, Matter of Kellogg, 35 AD2d 145,148, mot for lv to app den 28 NY2d 481).
Option No. 2 gives plaintiff an irrevocable option to purchase the strip of land, but irrevocability pertains to the kind of option and not to its duration. Other than the exception according to which defendants, by selling Parcel B, may accelerate the period in which plaintiff must elect, the terms of the agreement are silent as to the time in which plaintiff may choose to exercise its option. In that regard, EPTL 9-1.3 provides:
“(a) Unless a contrary intention appears, the rules of construction provided in this section govern with respect to any matter affecting the rule against perpetuities.
“(b) It shall be presumed that the creator intended the estate to be valid.
* * *
“(d) Where the duration or vesting of an estate is contingent upon the probate of a will, the appointment of a fiduciary, the location of a distributee, the payment of debts, the sale of assets, the settlement of an estate, the determination of questions relating to an estate or transfer tax or the occurrence of any specified contingency, it shall *713 be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate.” (Emphasis added.)
Although the occurrences enumerated in subdivision (d) are administrative in nature, the presumption should be construed as applying to contingencies of a type other than administrative. (See Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.3, 1980-1981 Supp, p 159.) Additionally, the legislative history indicates that the phrase should be broadly construed: “(3) Paragraph (d) of 9-1.3, which creates a presumption that administrative contingencies were intended to occur within the permissible period, has been broadened to make the presumption applicable in the case of any specified contingency — the word ‘specified’ being substituted for the word ‘like’ in the existing statute.” (Fifth Report of Temporary State Commission on Modernization, Revision and Simplification of the Law of Estates, p 2023.)
The primary rule of statutory construction is to give effect to the intent of the Legislature and, in ascertaining that intent, the court should look to the purpose to be achieved, the mischief to be remedied, or the circumstances which prompted the change. (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 92, 95.) The Temporary State Commission’s report to the Legislature shows that the objective of the change of “like” to “specified” in EPTL 9-1.3 (subd [d]) was to preclude a construction which would have restricted the application of that subdivision to administrative contingencies.
A more restrictive reading of EPTL 9-1.3 (subd [d]) was employed in Matter of Shaul (58 Misc 2d 967), but that case is distinguishable from the instant case because a contrary intent regarding the duration of the contingency clearly appeared in the instrument there considered. (See, also, Matter of Kellogg (35 AD2d 145, supra.) Courts are not permitted to rewrite instruments so as to insert a shorter period of duration for the contingency when such is clearly not the intent of the creator. Where the creator’s express intent is to create an impermissibly long restriction on the marketability of title, the rule against perpetuities will *714 operate to defeat that intent. (Matter of Kellogg, supra, p 148.) In the case at bar, however, there is no indication of an intended duration; consequently, the court must construe the agreement and in so doing must utilize those presumptions provided in law to effectuate such provisions. Under well-established rules of construction where two interpretations are possible, one of which renders an instrument valid and enforceable and another which renders it invalid, the court will give it the former construction. (O’Neil Supply Co. v Petroleum Heat & Power Co., 280 NY 50, 56; Meyer v Price, 250 NY 370, 378; Mee v Gordon, 187 NY 400, 410; Jacoby v Jacoby, 188 NY 124, 130-131; Du Bois v Ray, 35 NY 162; Matter of Bruckheimer, 193 Misc 414, 417, affd 267 App Div 783, affd 294 NY 31; Matter of de Varona, 274 App Div 303, 305.) There being nothing in the agreement or the affidavits suggesting the existence of any evidence rebutting the afore-mentioned presumptions, EPTL 9-1.3 controls and Option No. 2 is construed as having a duration of 21 years from the date it was executed.[2]
In their third affirmative defense, defendants assert that Option No. 2 is invalid for failure of consideration. As a basis for this argument they contend Option No. 1 violated the rule against perpetuities and was void at its creation. Such being the case plaintiff’s withdrawal of its election under Option No. 1 could not serve as consideration for receiving Option No. 2 from defendants.
In 1954 when Option No. 1 was created, the statutory rule against perpetuities encompassed only the rule limiting suspension of alienation. (Real Property Law, former § 42; see L 1929, ch 229, § 16.) The remoteness of vesting rule presently found in EPTL 9-1.1 (subd [b]) was not added until 1965 (L 1965, ch 670). Although in some cases the vesting rule was judicially asserted to be in effect in New York (see, e.g., Matter of Brewster, 246 App Div 192,196), *715 the court never imposed the rule in cases involving options to purchase property. (Matter of City of New York [Upper N. Y. Bay], 246 NY 1; Kowaisky v Familia, 71 Misc 2d 287; Blankman v Great Western Food Distrs., 57 Misc 2d 754, supra; Matter of Quigley, 37 Misc 2d 320; Matter of Abbondondolo, 10 Misc 2d 418; see, also, 45 NY Jur, Perpetuities and Restraints, § 10; Editorial Note, The New York Rule Against Perpetuities, 22 Brooklyn L Rev 70, 134-135.) Although there is ample authority that the “remoteness of vesting” rule is not applicable to Option No. 1, that question need not be addressed. No consideration is required for a written irrevocable option. (General Obligations Law, § 5-1109; Capalongo v Giles, 102 Misc 2d 1060, 1067.) Further, the option agreement acknowledged and executed by defendants provides in relevant part: “NOW, therefore, in consideration of One Dollar ($1.00) and other good and valuable considerations, the parties hereto agree as follows:”. Defendants are thereby estopped from denying receipt of valuable consideration. (Cochran v Taylor, 273 NY 172; Sanford v Smith, 4 Misc 2d 820, affd 273 App Div 928.)
By their fourth affirmative defense defendants assert a counterclaim against plaintiff and the joined parties seeking damages for loss of use of their land and other unspecified damages. As a basis for those claims, defendants contend that James Wadsworth, representing the estate of Robb, and Anthony Dutton, acting as either a trustee of plaintiff or as its legal counsel, were both members of the same law firm and that this amounted to a conflict of interest which injured defendants by interfering with their contract rights. Paragraph 30 of defendants’ answer alleges : “That specifically, Wadsworth, rather than properly representing his client by attempting to clear title to the Robb parcel, conspired with Dutton to to [sic] improve the plaintiff Seminary’s position.” Defendants’ conclusory allegations of conspiracy and interference with contract rights are not supported by the facts and thus fail to state a cause of action.
Defendants had no attorney-client relationship with Wadsworth, Dutton or their law firm, but rather were represented at all times by Michael L. McCarthy, one of the *716 defendants, then an attorney and presently a Judge. It is clear that defendants were dealing at arm’s length in their negotiations with the estate of Robb for the purchase of Parcel B and with plaintiff for the execution of Option No. 2. The fact that two attorneys from the same firm represented two different parties holding interests in property defendants sought to purchase does not make the dealings oppressive or conspiratorial. If plaintiff benefited from the exercise of its option, it was prudent judgment and not a conspiracy to injure defendants. Defendants were aware of Option No. 1 and concluded to their apparent satisfaction an agreement with plaintiff to resolve the problem presented. Accordingly, plaintiff’s motion for summary judgment dismissing the counterclaim against it is granted. The joined parties are also entitled to dismissal of the counterclaim. While their motion is one brought under CPLR 3211 (subd [a], par [7]) which has not been converted into a motion for summary judgment, the counterclaim is insufficient on its face and there appears from the affidavits no. reasonable possibility that defendants can establish a cause of action. (See ATI, Inc. v Ruder & Finn, 42 NY2d 454, 461; Hawking v McCluskey, 79 AD2d 853.) In any event, the motion and. cross motion for summary judgment search the record and the court may grant summary judgment to any party so entitled. (CPLR 3212, subd [b]-)
Additionally, nothing contained in defendants’ affidavits establishes facts which would tend to show that plaintiff has not come into court with clean hands as asserted in the fifth affirmative defense. The conclusory allegations of conspiracy and tortious interference with contract, without basis in fact, will not preclude equitable relief for plaintiff. Finally, defendants are entitled to judgment dismissing that portion of the complaint seeking money damages in the amount of $5,000. Neither the complaint nor plaintiff’s affidavits contain any factual allegations which would entitle plaintiff to such relief in addition to specific performance.
Plaintiff’s motion is granted to the extent that judgment will be entered ordering specific performance by defendants under the terms of Option No. 2 and dismissing the counter *717 claim against plaintiff. Plaintiff’s motion is denied with respect to judgment against defendants for damages in the amount of $5,000. Defendants’ cross motion for summary judgment is granted with respect to dismissal of plaintiff’s claim for monetary damages and is denied in all other respects. The joint parties’ motion for dismissal of the counterclaim as it pertains to them is granted.

. Defendants sought to bring in the additional nonparties by impleader. The cause of action asserted against those nonparties is not rooted in indemnity or contribution and therefore impleader is an inappropriate procedural vehicle. The claims should be denominated as part of defendants’ counterclaim. (CPLR 1007, 3019, subds [a], [d]; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1007:3, pp 35-36; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3011:7, pp 567-568; Kaplan v K. Ginsburg, Inc., 7 Misc 2d 136.) The “third-party complaint” is therefore made a part of defendants’ counterclaim against plaintiff. (CPLR 103, subd [c] ; see Hirsch v Schiffman, 199 Misc 883.) The motion by the joined parties is also treated accordingly.

. Similarly, section 5-1109 of the General Obligations Law, pertaining to written irrevocable options provides in relevant part: “When such a writing states that' the offer is irrevocable but does not state any period or time of irrevocability, it shall be construed to state that the offer is irrevocable for a reasonable time.” A reasonable time should be adjudged to be within the confines of the rule against perpetuities.