BUFFALO SEMINARY, Respondent, v MICHAEL L. MCCARTHY et al., Defendants and Third-Party Plaintiffs-Appellants. ESTATE OF RUTH L. ROBB et al., Third-Party Defendants-Respondents.

Fourth Department, May 14, 1982

436

APPEARANCES OF COUNSEL

*Burd & McCarthy* (*Timothy A. McCarthy* of counsel), for appellants.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Jerrold S. Brown* of counsel), for respondents.

OPINION OF THE COURT

HANCOCK, JR., J.

██ Plaintiff and defendants own contiguous parcels of land in Buffalo. Special Term has granted summary judgment to plaintiff directing specific performance of an option agreement giving it the right to buy a 20-foot strip along the southerly border of defendants' property (106 Misc 2d 707). Defendants voice several arguments on appeal, but the decisive question concerns the validity of the option agreement which they seek to invalidate on three principal grounds: (1) that it suspends the absolute power of alienation for a period longer than that permitted by EPTL 9-1.1 (subd [a], par [2]);[1] (2) that it violates the statutory rule against remoteness in vesting set forth in EPTL 9-1.1 (subd [b]);[2] and (3) that it constitutes an illegal restraint on the free alienability of the property covered by the option. For reasons hereinafter stated, we hold that the option violates the statutory rule against remoteness in vesting in EPTL 9-1.1 (subd [b]) and that it is, therefore, invalid. Accordingly, there must be a reversal in part and a

[1]. EPTL 9-1.1 (subd [a], par [2]) provides in part: "Every present or future estate shall be void in its creation which shall suspend the absolute power of alienation by any limitation or condition for a longer period than lives in being at the creation of the estate and a term of not more than twenty-one years."

[2]. EPTL 9-1.1 (subd [b]) provides in part: "No estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved."

grant of summary judgment to defendants dismissing plaintiff's complaint. We hold, however, that defendants' counterclaim has no merit and accordingly affirm the dismissal of it for the reasons stated at Special Term. We concur with Special Term that the option does not suspend the absolute power of alienation (EPTL 9-1.1, subd [a], par [2]) and reject appellants' contentions on this point as well as their argument that the option constitutes an illegal restraint on alienation. Although our holding (see Part II, *infra*) with respect to the rule against remoteness in vesting is dispositive, we set forth our reasoning on the other two issues in Parts I and III because the appeal, in our opinion, presents unusual questions. Discussion of the legal points requires an examination of the option and the circumstances surrounding its execution.

The option in question is set forth in an agreement dated September 30, 1976 between plaintiff and defendants. The option is irrevocable and gives plaintiff the right to purchase "all or any part of a 20 foot strip of land comprising and extending along the entire southerly boundary" of defendants' property at the market value to be agreed upon at the time of purchase. In the event that the parties cannot agree, the price is to be set by three appraisers, one to be appointed by each party and the third to be chosen by the two appraisers. During the life of the option "no structures or other improvements shall be placed or created upon said 20 foot strip." Defendants have the right to terminate the option by serving a 30-day notice if "at any time hereafter" they receive a bona fide offer for the purchase of their entire premises. The option is granted to plaintiff, "its successors and assigns." In the final paragraph, the agreement is made binding upon "the heirs, executors, administrators, successors and assigns of the parties hereto."[3]

---

3. The option is contained in a separate agreement dated September 30, 1976, executed by defendants Michael and Kathleen McCarthy and Anna Marie McCarthy, now deceased, and by Edward B. Reed, president of plaintiff Buffalo Seminary, a domestic corporation. Omitting the description of the property, several "whereas" clauses, and other standard formal contractual provisions, the terms of the option agreement are as follows:

The September 30, 1976 instrument replaces a prior option covering the same 20-foot strip. The first option, having terms virtually·identical to the second, was granted by defendants' predecessor in title, Ruth L. Robb, to plaintiff's predecessor, Palma V. Tripi, on July 3, 1954 when Tripi acquired the property (the southerly parcel, now owned by plaintiff, hereinafter referred to as "the Tripi parcel") from Robb and is contained in the Robb-Tripi deed.

The present option resulted from negotiations between plaintiff and defendants when defendants were in the process of purchasing the property they now own from the Robb estate (the northerly parcel now subject to the option, hereinafter "the Robb parcel"). Upon receipt of defendants' purchase offer, the Robb estate served upon plaintiff the 30-day termination notice pursuant to the provisions of the original Robb-Tripi option. Plaintiff exercised the option to purchase the 20-foot strip but withdrew its exercise and permitted the original option to lapse when plaintiff and defendants entered into the September 30, 1976 agreement.

We are concerned only with plaintiff's right to exercise the option granted to it on September 30, 1976.

I

■ As to defendants' argument that the option illegally suspends the absolute power of alienation, we agree with Special Term that "[t]here is no violation of [EPTL 9-1.1, subd (a), par (1)] inasmuch as at all times plaintiff or its assigns and defendants or those taking [the northerly parcel] from them could have acted together and conveyed a fee absolute in [that parcel]" (*Buffalo Seminary v McCarthy,* 106 Misc 2d 707, 712 *supra*; see *Matter of City of New*

"1. The parties of the first part hereby grant unto the party of the second part, its successors and assigns, an irrevocable option to buy and receive good and marketable title to all or any part of a 20 foot strip of land comprising and extending along the entire southerly boundary of the premises at 160 Windsor Avenue, Buffalo, New York, as more particularly described in Schedule A annexed hereto and made a part hereof, subject to the same utility easements and building restrictions as set forth in said deed recorded in Liber 5577 of Deeds at page 276 in the Erie County Clerk's Office, provided, however, that in the event the parties of the first part shall, at any time hereafter, receive a bona fide written offer for the purchase of their entire premises at 160 Windsor Avenue including said 20 foot strip, or for their entire premises at 160 Windsor Avenue less said 20 foot strip, then and in that event, upon written notice thereof by said parties of the first part to the party of the second part, said option shall cease and determine upon the expiration of 30 days from the date of said written notice unless prior thereto said party

*York [Upper N. Y. Bay]*, 246 NY 1, 29-30; *Epstein v Werbelovsky,* 193 App Div 428, affd 233 NY 525; *Kowalsky v Familia,* 71 Misc 2d 287; *Blankman v Great Western Food Distrs.,* 57 Misc 2d 754; *Matter of Abbondondolo,* 10 Misc 2d 418). In *Williams v Montgomery* (148 NY 519, 526), the court defines the test of alienability as whether "there are persons in being who can give a perfect title"; thus, it follows that "[w]here there are living parties who have unitedly the entire right of ownership, the statute [concerning suspension of the absolute power of alienation] has no application * * * The ownership is absolute whether the power to sell resides in one individual or in several. If there is a present right to dispose of the entire interest, even if its exercise depends upon the consent of many persons, there is no unlawful suspension of the power of alienation" *(Williams v Montgomery, supra,* p 526). In the leading case on the applicability of the rule to options to buy real property, *Matter of City of New York (Upper N. Y. Bay) (supra,* pp 29-30, decided prior to the 1965 enactment of a broad rule against remote vesting, Real Property Law, § 43, subsequently EPTL 9-1.1, subd [b]), the court held that an option to buy does not suspend the absolute power of alienation because all parties to the option are in being and can convey a fee by their united action. In the present case, optionor and optionee and their "heirs, executors, administrators, successors and assigns" at all times were and are able to join together to convey a fee simple. We see no basis for distinguishing *Matter of City of New York.* We find it controlling.

---

of the second part shall have given written notice of its exercise of said option to said parties of the first part. During said period of time, no structures or other improvements shall be placed or created upon said 20 foot strip. The price to be paid for said 20 foot strip shall be the market value thereof at the time of purchase, provided, however, that in determining said market value, no value shall be assigned to any structures or improvements, all or any part of which may be located thereon, excepting only the driveway and stone wall now on the premises. In case the parties are unable to agree as to the market value of the property at the time of purchase, then such value shall be determined by an appraiser appointed by the parties of the first part, an appraiser appointed by the party of the second part and a third appraiser appointed by the other two. The fees of each of the first two appraisers shall be paid by the party making the appointment; the fee of the third appraiser shall be paid equally by the parties hereto.

"2. In the event of an exercise of this option by the party of the second part with respect to a portion of said 20 foot strip, said portion must be contiguous with the premises

## II

Two questions must be examined in the discussion of whether the option on the Robb property creates an interest which may vest beyond the period permitted by EPTL 9-1.1 (subd [b]): (1) whether the New York rule when adopted in 1965 (Real Property Law, § 43, added L 1965, ch 670, § 1, later EPTL 9-1.1, subd [b]) was intended to embrace interests created under unlimited purchase options, and (2) if so, whether the option at bar is an unlimited option which violates the rule.

### A.

The New York rules concerning suspension of the power of alienation and remoteness in vesting have been codified since 1830. The interests presently subject to the rule against suspension of the absolute power of alienation (viz., "[e]very present or future estate", EPTL 9-1.1, subd [a], par [2]) are essentially the same as those subject to the original rule (1 Rev Stats [1st ed], part II, ch I, tit II, §§ 14-16, later Real Property Law, § 42; see Simes, Future Interests [2d ed], § 138). The New York rule against remoteness in vesting, however, prior to 1965, concerned only contingent remainders on terms of years and fees limited upon prior fees upon contingencies (Real Property Law, §§ 46, 50, formerly 1 Rev Stats [1st ed], part II, ch I, tit II, §§ 20, 24; see *Matter of Wilcox,* 194 NY 288, 298; Simes, *op. cit.,* §§ 137, 138; 1936 Report of NY Law Rev Comm, p 545), and thus would not expressly have encompassed options to purchase (see Simes, *op. cit.,* §§ 137, 138; 1936 Report of NY Law Rev Comm, p 548; cf. *Walker v Marcellus & Otisco Lake Ry. Co.,* 226 NY 347). At issue is whether the New York rule after the enactment in 1965 of a broad prohibition against remote vesting (Real Property Law, § 43 [L

owned by the party of the second part at the time of exercise and the conveyance of said portion to the party of the second part pursuant to such exercise shall not leave any portion of the premises known as 160 Windsor Avenue, Buffalo, New York separate from the main parcel owned by the parties of the first part.

"3. Any exercise of this option and the subsequent conveyance pursuant thereto, shall automatically terminate any further right of option by the party of the second part in and to said 20 foot strip.

"4. The party of the second part hereby withdraws its exercise of the option included in the deed recorded in Liber 5577 of Deeds at page 276 in the Erie County Clerk's Office.

"5. The covenants hereinbefore in this paragraph contained shall bind the heirs, executors, administrators, successors and assigns of the parties hereto."

1965, ch 670, § 1], later EPTL 9-1.1, subd [b]), covers options to purchase real property.

Courts which have adopted the American common-law rule against remoteness in vesting[4] have almost invariably applied it to unlimited options[5] (see *Eastman Marble Co. v Vermont Marble Co.*, 236 Mass 138; *United States Va. Bank/Citizens & Mar. v Union Oil Co. of Cal.*, 214 Va 48; Restatement, Property, § 393; Ann., 66 ALR3d 1294; Simes, *op. cit.*, §§ 132, 142). In so doing they have followed the early English case, *London & South Western Ry. Co. v Gomm* (20 Ch D. 562). The *Gomm* court concluded that since an unlimited option to purchase is substantially the same as a conditional limitation, which is within the rule, it should therefore be subject to the rule against remoteness in vesting, stating: "There is in each case the same fetter on the estate and on the owners of the estate for all time" (*London & South Western Ry. Co. v Gomm, supra,* p 582).

The question thus is: whether the New York Legislature, when it enacted section 43 of the Real Property Law (later EPTL 9-1.1, subd [b]) in 1965, intended to adopt the American common-law rule against remote vesting which would apply to options as well as other interests or whether it

---

4. John Chipman Gray's classic statement of the American common-law rule against remote vesting, as it developed from the English rule (see *Thellusson v Woodford,* 11 Ves 112; *Low v Burron,* 3 Williams P. 262; *Duke of Norfolk's Case,* 3 Ch Cas 1; Simes, Future Interests [2d ed], § 122) is as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest" (Gray, The Rule Against Perpetuities [4th ed, 1942], 191, quoted in Simes *op. cit.*, § 127, p 263).

5. Whether the option may properly be classified as an independent option is not clear. Since it is not part of a lease (options appendant to leases have been held not to be subject to the rule against perpetuities), it meets Professor Berg's definition of an "option in gross" (see Berg, Long-Term *Options* and the Rule Against Perpetuities, 37 Cal L Rev 1, 21; Simes & Smith, the Law of Future Interests [2d ed], § 1244, pp 161-162; Simes, Future Interests [2d ed], § 132, p 282). But see *Witt v Disque* (79 AD2d 419, 425, 426, citing Ann., 66 ALR3d 1294) to the effect that an independent option is one which is not only not part of a lease but is also unrelated to any other transaction. The option at bar would not meet this test. While the distinction may be of significance to the question of whether the option creates an unreasonable restraint on alienation (see Point III, *infra*) (the context in which the question is discussed in *Witt v Disque, supra*), we find it to be irrelevant to the issue here, i.e., whether the option violates the rule against remoteness in vesting. The important point with regard to this issue is that the option is not part of a lease (see Berg, *op. cit.,* p 21; Simes & Smith, *op. cit.,* § 1244, pp 161-162; Simes, *op. cit.,* § 132, p 282).

adopted a different rule which would except options. We conclude that the Legislature intended to adopt the accepted common-law rule. In a report, entitled "The Common Law Rule Against Perpetuities", written prior to the enactment of section 43, the revisers examined the common-law rule and the rule in New York and stated: "The purpose of this report is to enable the Commission to consider the advisability of recommending to the Legislature the enactment of a statute * * * expressly making the common law rule against perpetuities * * * the law of this State" (Fourth Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1965, No. 19, p 472). That the enactment was intended to reflect the common-law rule is also the view of Professor Simes, who states that it "amounts to a declaration that the common law rule against perpetuities is in force [in New York]" (Simes, *op. cit.,* § 142, p 310). The wording of the statute as proposed in the revisers' report and as subsequently adopted is very close to that of Gray's widely accepted statement of the American common-law rule and to that of the Model Rule Against Perpetuities Act which is recognized as a statement of the common-law rule (see Fourth Report of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, NY Legis Doc, 1965, No. 19, p 473, citing Scott, Trusts [2d ed], § 62.10, p 540).

■ The meager treatment of the issue in New York case law subsequent to the 1965 enactment points to the conclusion that options are within the New York rule. There is no decision squarely addressing the issue, but the cases dealing with the application of the rule against perpetuities to options hold by implication that options are within the rule against remoteness in vesting (see *Witt v Disque,* 79 AD2d 419, 424, to the effect that the rule against remote vesting was not violated because the exercise of the option in that case was bound to occur within the permissible period; see, also, *Izzo v Brooks,* 106 Misc 2d 743).[6]

---

**6.** The court in *Izzo v Brooks* (106 Misc 2d 743, 751-754), while stating that an option which creates a contingent equitable interest would be within the rule against remote

Plaintiff argues, nevertheless, that the 1965 enactment was intended to codify an early New York common-law rule which excepted options from the prohibition against remote vesting. It cites no authority, however, nor have we found one suggesting that there was such an exception. It is true that prior to 1965 New York courts had held that unlimited options were valid (see *Matter of City of New York [Upper N. Y. Bay]*, 246 NY 1, *supra; Epstein v Werbelovsky,* 193 App Div 428, affd 233 NY 525, *supra*), but these decisions related only to the applicability of the rule against suspension of the power of alienation. As stated, New York's statutory rule against remote vesting between 1830 and 1965 was narrow and concerned only certain types of interests (viz., fees or less estates limited on fees on contingencies and contingent remainders on terms of years) (Real Property Law, §§ 46, 50, formerly 1 Rev Stats [1st ed], part II, ch I, tit II, §§ 20, 24; see Simes, *op. cit.,* §§ 137, 138; *Matter of Wilcox,* 194 NY 288, 298, *supra,* quoting Chaplin, Suspension of the Power of Alienation, p 1; 1936 Report of NY Law Rev Comm, pp 545, 548) and could not reasonably have been construed to include options.[7] Thus, the failure of the *City of New York* and *Epstein* cases to invalidate options on the ground of remoteness in vesting is attributable to the absence of statutory prohibition and not to New York's adherence to a unique common-law rule excepting options from the proscription of remote vesting.

We conclude as did Special Term that EPTL 9-1.1 (subd [b]) is intended to apply to a purchase option creating an interest which may vest beyond the permissible period.

vesting, interpreted the pre-emptive option there as creating a vested interest subject to defeasance, thereby avoiding application of the statute. Options are generally regarded as creating contingent equitable interests and we find no support for the court's construction (see Ann., 66 ALR3d 1294, 1299; Simes, Future Interests [2d ed], § 132, p 281; § 138, p 304; compare cases cited in Ann., 40 ALR3d 920, § 3, [b], pp 929-931, considering conveyances upon conditions subsequent involving pre-emptive options). The rule against perpetuities applies not to the immediate contractual right to exercise the option but to the future interest which may vest if and when the option is exercised.

**7.** Indeed, the court in *Walker v Marcellus & Otisco Lake Ry. Co.* (226 NY 347) appeared to encounter some difficulty in extending the statute to encompass a "springing use", a future estate which the court considered to be "substantially identical" to the interests expressly included within the statute; one would conclude that the court construed the reach of the statute narrowly. It would seem that the court would have been extremely reluctant to extend it to options.

## B.

Assuming the applicability of the statutory rule against remote vesting, the question remains whether the provisions of the agreement before us create an unlimited option which offends the rule (EPTL 9-1.1, subd [b]).

Special Term, finding no "contrary intention in the instrument", invoked EPTL 9-1.3 ("Rules of construction") and held that it must be presumed that the grantor of the option intended it to be valid and "intended [the exercise of the option] to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate" (EPTL 9-1.3, subd [d]).[8] Our analysis of the instrument compels the conclusion that it was intended to be of indefinite duration and that in view of the appearance of such "contrary intention" EPTL 9-1.3 was improperly applied.

The option contains no limitation on duration nor words suggesting that the parties intended the extent of its life to be anything other than indefinite. It is the very lack of any such limitation which most convincingly demonstrates that the parties intend the option period to be without limit. The terms of the instrument can lead to no other interpretation.

The provision for termination of the option by service of a 30-day notice specifies that the notice may be served by the owners of the optioned property if they *at any time hereafter,* receive a bona fide written offer for the purchase of their entire premises" (emphasis added). The import of the words "at any time hereafter" is self-evident.

The option is granted to "the party of the second part, its successors and assigns" and made binding upon "the heirs,

---

**8.** Insofar as pertinent, EPTL 9-1.3 ("Rules of construction") provides:

"(a) Unless a contrary intention appears, the rules of construction provided in this section govern with respect to any matter affecting the rule against perpetuities.

"(b) It shall be presumed that the creator intended the estate to be valid * * *

"(d) Where the duration or vesting of an estate is contingent upon the probate of a will, the appointment of a fiduciary, the location of a distributee, the payment of debts, the sale of assets, the settlement of an estate, the determination of questions relating to an estate or transfer tax or the occurrence of any specified contingency, it shall be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate."

executors, administrators, successors and assigns of the parties hereto." Contrary to plaintiff's argument, the inclusion of such words is significant and shows the parties' understanding that the option is to "extend in duration for an indefinite period of time" (Berg, Long-Term Options and the Rule Against Perpetuities, 37 Cal L Rev 235, 264; see, generally, Berg's discussion, pp 258-264; compare *Witt v Disque,* 79 AD2d 419, *supra, Dodd v Rotterman,* 330 Ill 362, and *Weitzmann v Weitzmann,* 87 Ind App 236, in which the option could be exercised only by the named party and not by successors or assigns thereof — in such cases, the duration of the option would of necessity be limited to a life in being).

Finally, from a reading of the option agreement as a whole, it appears that the chief benefit to the grantees of the option was and is more in the protection given them from the placing of a building or improvements on the optioned parcel than in the economic value of the right to purchase the property. The optioned land is a thin slice (20 feet) between two residential properties — a piece which could, by itself, be of no practical use, would not be salable, and could have no value except to one of the owners of the two adjoining parcels. So long as the option is in existence, the term prohibiting the placing or erection of structures or other improvements "upon said 20 foot strip" remains in effect. Thus, a primary purpose of the option is being fulfilled and its value being enjoyed by the owners of the Tripi parcel without the necessity of their exercising the option unless and until the option is terminated by service of the 30-day notice. The parties obviously recognized that the protective feature of the option would be of value not only to the then owners of the Tripi parcel but to prospective owners indefinitely and for this reason stipulated that the agreement was to be binding upon "the heirs, executors, administrators, successors and assigns of the parties hereto." This effect of the option — continued protection from building on the property — is not consistent with a construction that it was intended to be limited in duration to 21 years.

Despite such indications of a "contrary intention" respondent maintains that the option should be construed as having a life of 21 years under EPTL 9-1.3, contending that "the absence of a measuring life or other stated time period is the very factor which triggers the application of the statute." The argument answers itself. The essence of an unlimited option is that it contain no limit on duration. It strains reason to seize upon the essential quality which makes the option unlimited (i.e., the absence of a limit) as the "very factor" which compels the construction that it is limited.

In sum, all of the relevant terms including most significantly the absence of any limitation on duration point to the conclusion that the parties intended the option to last indefinitely, i.e., until the owners of the property subject to the option cut it off by service of the 30-day notice.[9] To hold, as respondent would have us, that the absence of any limit gives rise to the presumption that the parties intended the option to last only 21 years would give an effect to EPTL 9-1.3 that the Legislature could not have intended: the virtual exemption from the reach of the rule against remoteness in vesting (EPTL 9-1.1, subd [b]) of options which contain no limit. Only those unlikely options which by their terms would invite application of the rule (i.e., which specify that the option is intended to be unlimited or to last perpetually) could be held invalid. The only other path to the end respondent seeks is by way of an extensive rewriting of the option agreement pursuant to EPTL 9-1.3 so as to make it conform to the permissible period — a process specifically condemned in *Matter of Kellogg* (35 AD2d 145, 148).

In view of the above, we need not address the point much discussed in the briefs, i.e., whether the Legislature's sub-

---

9. Contrary to respondent's view, we find the fact that the option is irrevocable irrelevant to the question of the extent of its intended duration. Section 5-1109 of the General Obligations Law, cited in *Buffalo Seminary v McCarthy* (106 Misc 2d 707, 714, n 2, *supra*) is inapplicable. The section provides that an offeror's promise that his written offer is irrevocable need not be supported by consideration and that an irrevocable offer containing no time limit must be held open for at least a reasonable time. The purpose of section 5-1109 is not to *reduce to a reasonable time* the duration of an offer or option which remains open until revoked or, as here, is indefinite, but rather to *extend* the life of the irrevocable offer to a reasonable time to protect the offeree from premature revocation (see 1941 Report of NY Law Rev Comm, pp 576, 579).

stitution of "specified contingency" for "like contingency" in EPTL 9-1.3 (subd [d], L 1966, ch 952) broadened the reach of that subdivision to the extent that it would encompass the type of contingency before us.[10]

We hold, therefore, that the option here is invalid since it creates an interest which may vest beyond the period permitted in EPTL 9-1.1 (subd [b]).

## III.

■ Finally, in addition to their arguments based on the rule against perpetuities (EPTL 9-1.1, subds [a], [b]), defendants assert that the option is invalid because it imposes an unreasonable restraint on their ability to sell either the Robb property as a whole or the 20-foot strip covered by the option. We find no such illegal restraint.

The rule against unreasonable restraints on alienation has developed through decisional law and is founded on the public policy in favor of facilitating the free transfer of property (see *Witt v Disque,* 79 AD2d 419, 424, 425, *supra;* see, generally, Simes & Smith, The Law of Future Interests [2d ed], §§ 1111-1117). While the rule has been applied

10. It seems settled that the Legislature in replacing "like contingency" with "specified contingency" (EPTL 9-1.3, subd [d], L 1966, ch 952) in response to the decisions in *Matter of Connor* (37 Misc 2d 363) and *Matter of Nathanson* (27 Misc 2d 340) (see Revisers' Notes, McKinney's Cons Laws of NY, Book 17B, EPTL 9-1.3, p 549) intended to broaden EPTL 9-1.3 (subd [d]) to include as covered contingencies events other than those which are purely administrative. In view of the legislative decision upon amendment to leave in the subdivision the list of the type of contingencies encompassed thereby (e.g., "the probate of a will, the appointment of a fiduciary, the location of a distributee, [and] the payment of debts"), one must conclude that it did not intend to broaden EPTL 9-1.3 (subd [d]) so that "specified contingency" would include all stated events regardless of nature. Such a construction would attach no significance to the listed events and would render their inclusion purposeless, contrary to the basic rule of statutory construction that effect and meaning must be given to every part of an enactment (see McKinney's Cons Laws of NY, Book 1, Statutes, § 98). Also, such a construction would bring within the scope of the statute the very event upon which the estate is limited or upon the occurrence of which the interest is to vest (e.g., the cessation of the use of the lime kiln in *Walker v Marcellus & Otisco Lake Ry. Co.,* 226 NY 347). One must seriously question whether the Legislature in amending EPTL 9-1.3 ("Rules of construction") could have intended that an amendment to a rule of construction should be interpreted so as to effect a fundamental substantive change in the rule against remoteness in vesting. While we do not pass upon the propriety of holding that the exercise of the option at bar is the sort of "specified contingency" contemplated by EPTL 9-1.3 (subd [d]) as amended, we note that the exercise of an option differs from the examples set forth in that subdivision in two respects: one, it is not an event that would necessarily be expected to happen in the near future such as for example, the probate of a will or the appointment of a fiduciary, and, two, it is the very event — indeed the only event — upon the happening of which the interest vests and not an incidental or collateral event such as the probate of a will.

to some options containing pre-emptive provisions (e.g., prohibitions against sale of property without first offering it to a designated purchaser) (see *Witt v Disque, supra; Kowalsky v Familia,* 71 Misc 2d 287, *supra;* Restatement, Property, § 413; Simes & Smith, *op. cit.,* § 1154), we have found no New York decision holding that an option to purchase such as the one at bar constitutes an illegal restraint. Referring to the purchase option as distinguished from an option containing a pre-emption clause, Professors Simes and Smith point out: "The option seems rather clearly to be only an indirect restraint, if it is a restraint at all. Practical alienability may, in some instances, be restrained by an option, but its primary purpose is to enable a particular person to buy, not to prevent anyone from selling. The option is obviously valid, but it is normally subject to the rule against perpetuities so that it is invalid if it can be exercised beyond the period fixed by that rule" (Simes & Smith, *op. cit.,* § 1154, p 61).

The option here is a purchase option with no pre-emptive provision. The owners of the Robb property are not prohibited from selling all or any part of it, even the 20-foot strip. There is no provision requiring that, before accepting an offer of purchase, they must first offer the property to the optionee. In the event that a termination notice is served, the optionee or its grantee may exercise the option at any time within the 30-day period. At all times until the option either is exercised or lapses for failure of exercise within the 30-day termination period, a purchaser may take subject to the option. Thus, there is no direct restraint on alienation. Nor do we see an indirect restraint on the alienability of the Robb property inasmuch as the option concerns a relatively insignificant portion of the property and because it may be terminated by service of the 30-day notice.

For the same reason, the option imposes no direct restraint on alienation of the 20-foot strip. There is nothing to prevent the sale of the property subject to the option. A theoretical argument can be made, however, that the practical alienability of this piece is impeded indirectly (see

Simes & Smith, *op. cit.,* § 1154), because the receipt of an offer for the 20-foot parcel alone would not give the owners of the Robb parcel the right to serve a 30-day notice of termination (that right is triggered only upon receipt of a bona fide offer for the "entire premises"). Therefore, because the option could last indefinitely and would effectively prevent any building on the property by the optionors or their grantees, thus giving the owners of the Tripi piece the protection of the option without their having to exercise it (see Point II, Part B, *supra*), the option would be an obvious impediment to sale. We find this restraint to be of no significance, however, for the 20-foot strip standing alone — a slice of land sandwiched between the two residential properties — is as a practical matter unmarketable and inalienable (see Point II, Part B, *supra*). Further, even if the option were held to be an indirect restraint on alienation of the 20-foot strip, under the circumstances presented in this record — most significantly the interest of the optionee in the strip which adjoins its property and the fact that it would be of no value to any prospective purchaser other than the optionee — we could not find the restraint unreasonable (see *Witt v Disque,* 79 AD2d 419, 426-428, *supra; Izzo v Brooks,* 106 Misc 2d 743, 748-750, *supra; Perry v Brundage,* __ Col __, 614 P2d 362; Restatement, Property, § 406; Simes & Smith, *op. cit.,* § 1154, n 45).

The judgment, therefore, should be reversed insofar as it grants summary judgment and specific performance to plaintiff and denies defendants' cross motion for summary judgment and otherwise affirmed. Defendants' cross motion should be granted dismissing plaintiff's complaint solely on the ground that the option is invalid because it violates the New York rule against perpetuities. Dismissal of defendants' counterclaim should be affirmed for the reasons stated at Special Term.

SIMONS, J. P., DOERR and SCHNEPP, JJ., concur with HANCOCK, JR., J.; MOULE, J., dissents and votes to affirm on the opinion at Special Term, DENMAN, J.

Judgment modified, on the law, and as modified, affirmed with costs to appellants, in accordance with opinion by HANCOCK, JR., J.