[882 NYS2d 42]

Bleecker Street Tenants Corp., Appellant, v Bleeker Jones
LLC et al., Respondents, et al., Defendants.

First Department, June 23, 2009

**APPEARANCES OF COUNSEL**

*Genoa & Associates, P.C.*, Old Brookville (*Marilyn K. Genoa* of counsel), for appellant.

*Goldberg Weprin Finkel Goldstein LLP*, New York City (*Matthew Hearle* of counsel), for respondents.

**OPINION OF THE COURT**

SAXE, J.

This appeal requires us to consider the centuries-old rule against perpetuities, specifically, whether the exception to the prohibition against remote vesting of options appurtenant to a lease is applicable to the renewal option clause contained in the parties' lease.

Plaintiff Bleecker Street Tenants Corp. is the owner of the building located at 277-279 Bleecker Street, a six-story walkup that was converted to cooperative ownership effective September 1, 1983. Contemporaneously with the co-op conversion, the building's first-floor commercial space was leased to defendant Bleeker Jones LLC's predecessor in interest, Bleecker Jones Leasing Company, a partnership made up of the same four individuals who made up the sponsor partnership.

The lease, drafted by the tenant, provided for an initial term of 14 years, with nine options to renew for consecutive 10-year

periods, exercisable through a series of notices. The tenant could exercise the renewal options by giving written notice at least six months before the end of the preceding term; the lease also provided that the landlord would send the tenant a "reminder notice" regarding the option, seven months before the end of the preceding term, if the tenant had not already exercised the option. In the event that the landlord did not send the seven-month notice and the tenant did not exercise the option on six months' notice, then the renewal option would remain in effect until such time as the landlord sent the tenant notice of its right to exercise the option. Once the landlord sent the tenant this final written notice, the tenant would have 60 days within which to exercise the renewal option. The lease further provided that, in the event that the renewal option went unexercised and the landlord did not send the 60-day notice, then, "[i]f the term shall have expired, Lessee shall remain in possession as a month-to-month tenant" until such time as the landlord sent the 60-day notice.

At the end of the initial 14-year lease term, on August 30, 1997, there was no exercise of the lease option. Accordingly, the commercial tenant thereafter remained in possession as a month-to-month tenant.

Plaintiff commenced this action in December 2007, seeking a declaration that the lease renewal options are void under the statutory and common-law rules against perpetuities and unreasonable restraints on alienation.

Defendants moved, and plaintiff cross-moved, for summary judgment. The motion court granted defendants' motion, ruling that the rule against perpetuities does not apply because the lease's renewal option is appurtenant to the lease, in that it " 'originates in one of the lease provisions, is not exercisable after lease expiration, and is incapable of separation from the lease' " (2008 NY Slip Op 32263[U], *15, quoting *Symphony Space v Pergola Props.*, 88 NY2d 466, 480 [1996]). The court reasoned that during the period of extended month-to-month possession, "[w]hile the 'term' of the Lease may expire upon the failure of either party to issue their respective notices, the Lease itself does not" (*id.* at *17).

New York's statutory rule against perpetuities includes a codification of the common-law rule prohibiting the remote vesting of interests and provides that "[n]o estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the

estate'' (EPTL 9-1.1 [b]). Stated another way, subdivision (b) '' 'invalidates any interest that may not vest within the prescribed time period' '' (*Symphony Space v Pergola Props.*, 88 NY2d at 476, quoting *Wildenstein & Co. v Wallis*, 79 NY2d 641, 647 [1992]). The rule flows from "the principle that it is socially undesirable for property to be inalienable for an unreasonable period of time" (*Symphony Space*, 88 NY2d at 475), and is designed to '' 'ensure the productive use and development of property by its current beneficial owners by simplifying owner- ship, facilitating exchange and freeing property from unknown or embarrassing impediments to alienability' '' (*id.*, quoting *Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 161 [1986]). Although the statutory period is lives in being plus 21 years, where—as here—the parties to the agreement are corporate entities and no measuring lives are stated in the instrument, "the perpetuities period is simply 21 years" (*Sym- phony Space*, 88 NY2d at 481; *Bruken Realty*, 67 NY2d at 161).

The rule against remote vesting has been held to be applic- able to purchase options contained in leases (*see Symphony Space* at 476), as well as to lease renewal options contained in leases (*see Warren St. Assoc. v City Hall Tower Corp.*, 202 AD2d 200, 200-201 [1994]).

On their face, all except the first of the renewal options provided for here would run afoul of the rule, as they vest more than 21 years after execution of the lease (*see e.g. Warren St. Assoc., supra*). However, an exception to the rule's generally strict application exists for options appurtenant to a lease, which are considered "part of" the lease (*see Buffalo Seminary v McCarthy*, 86 AD2d 435, 441 n 5 [1982], *affd* 58 NY2d 867 [1983]). The required characteristics of such options are that they (1) "originate[ ] in one of the lease provisions," (2) are "not exercisable after lease expiration," and (3) are "incapable of separation from the lease" (*Symphony Space*, 88 NY2d at 480).

An example of a lease renewal option that avoided application of the rule is found in this Court's recent decision in *Double C Realty Corp. v Craps, LLC* (58 AD3d 480 [2009]). There, the original lease term was 30 years, with a provision permitting the lessee, at its option, to extend the term of the lease for sep- arate additional periods of five years after the expiration of the initial term; the options were to be exercised by written notice to the lessor at least one year before the expiration of the term. If a renewal option was exercised, the provision specified, the lease "shall remain in full force and effect, changed only as to

the matters specified in this paragraph" (such as the amount of rent payable). The lease renewal provision did not provide for any exercise of the renewal options after the expiration of the lease term; it simply provided for exercise of the option during the lease term. Since the renewal option clause originated in the lease and was not capable of separation from the lease, it qualified as an option appurtenant and therefore did not run afoul of the rule against perpetuities.

In contrast, in *Warren St. Assoc. v City Hall Tower Corp.* (202 AD2d 200 [1994], *supra*), this Court ruled that lease renewal options were null and void because under the terms of the subject lease, the option could be exercised after the lease term had already expired. The lease provided for a 50-year term with six 25-year options after the original term, to be exercised by the tenant by notifying the landlord at least three months before the expiration of the term then in effect; however, the clause included the following proviso:

> "(it being expressly understood, however, that a failure by Tenant to serve any such notice shall not extinguish the renewal option to which same would have related, and such renewal option will only be considered extinguished and not exercised after Landlord notifies Tenant that Tenant has not so exercised same and Tenant, within 40 days after receipt of such notice, still does not serve a notice exercising such option). If Tenant serves a renewal notice, the term hereof shall be deemed automatically renewed and extended."

This Court concluded that the lease allowed the renewal option to exist, and be exercised, even after the lease term expired as a result of the tenant's failure to serve a renewal notice before the lease term expired. Thus, the second requirement of *Symphony Space,* that the option not be exercisable after lease expiration, was not met.

It is also useful to consider *Deer Cross Shopping v Stop & Shop Supermarket Co.* (2 Misc 3d 401 [Sup Ct, NY County 2003]), in which the lease renewal options were held not to run afoul of the rule. There, the original lease term was for 25 years, with the tenant having options to extend the lease for three additional 10-year terms, and the lease contained a provision similar to the one under consideration here, under which the tenant was to give notice of its intention to exercise an option before commencement of the option period, and the landlord

was required to notify the tenant of its failure to exercise the option. Importantly, however, the lease specifically provided that if the landlord failed to give the 60-day notice, then *"the term of the lease was automatically extended past the expiration date"* to 60 days after the date on which the landlord did give the notice (*id.* at 403). In reliance on that explicit extension of the term of the lease, the court reasoned that "the lease remained in full force and effect and did not end during the extended period" (*id.* at 405). Accordingly, the *Symphony Space* requirement that the option not be exercisable after the lease had expired was satisfied, and the renewal options qualified as options appurtenant to the lease.

█ Here, the critical difficulty lies in whether the options are exercisable after the expiration of the lease or only during the lease term. The lease contains no explicit extension of the term of the lease such as was present in *Deer Cross*. Rather, the lease's "savings provision" provides that in the event the landlord fails to give the 60-day notice, then, *"[i]f the term shall have expired*, Lessee shall remain in possession as a month-to-month tenant" until the landlord does give the 60-day notice (emphasis added). This explicit recognition that the lease term expires if not renewed establishes that the renewal option clause was intended to give the tenant an ability to renew the lease after it had already expired, as in the lease renewal option considered and rejected in *Warren St. Assoc.* (202 AD2d at 200).

Defendants argue that a distinction must be made between the expiration of a *term* of the lease and the expiration of the lease itself, so that while the "term of the lease" may have expired, the lease itself did not. This is a semantic distinction that cannot avail the tenant here. Notably, in the definitions article of the lease, section 28.2 specifically directs that the words "term of this lease" "shall be construed to mean the initial term and any renewal term in respect to which Lessee has exercised its right of renewal," but does not include the month-to-month terms created after the term of the lease expires. We reject defendants' view that the lease must be viewed as surviving indefinitely, so long as the landlord does not serve its reminder notice, *and* so long as the tenant continues as a month-to-month tenant.

A month-to-month holdover tenancy that results by operation of law when a lease expires does not extend the term of the expired lease; rather, each month is a new term for a new period, each a separate and new contract (*see Kennedy v City of*

*New York*, 196 NY 19, 23-24 [1909]; *Pedicini v D & M Metal Specialties, Inc.*, 199 Misc 399, 401 [App Term, 1st Dept 1950]). Similarly, a month-to-month tenancy that is created by a holdover provision in a lease does not create an extension of the original lease term (*see 120 Bay St. Realty Corp. v City of New York*, 44 NY2d 907 [1978]). In *120 Bay Street*, the tenant's lease term had expired without its formal exercise of the renewal option, although the tenant continued in possession pursuant to the lease's holdover provision. The Court of Appeals made a clear distinction between an extension of a lease term and an extension of a tenancy as a month-to-month tenant, observing that "defendant occupies the subject premises as a month-to-month tenant *rather than* as a tenant under a valid and existing lease" (44 NY2d at 909 [emphasis added]). Like the tenant in *120 Bay Street*, here, the tenant's month-to-month tenancy pursuant to the lease's holdover provision cannot be equated with a tenancy under an extended existing lease term. Therefore, its right to exercise the renewal options during the month-to-month tenancy that followed the termination of the lease term cannot satisfy the requirement that the option be exercisable during the lease term. Rather, the option provision actually allows its exercise after the termination of the lease term, precluding it from falling within the category of options appurtenant to a lease.

In addition, while the "savings statute" in the rules of construction accompanying the rule against perpetuities creates a presumption that "the creator intended the estate to be valid" (EPTL 9-1.3 [a]-[b]), that provision "does not authorize courts to rewrite instruments that unequivocally allow interests to vest outside the perpetuities period" (*see Symphony Space*, 88 NY2d at 482). Indeed, if there is any doubt as to how to construe the parties' lease with regard to whether it expired when the specified term ended without renewal notice, it is important to recognize that defendants' predecessors in interest drafted this sweetheart lease, and therefore there is reason to construe it against their interest (*see Taylor v United States Cas. Co.*, 269 NY 360, 364 [1936]). In fact, the present situation calls to mind the very object of the rule against perpetuities, "to defeat an intent of a . . . grantor to create unreasonably long restrictions upon the use or marketability of both real and personal property" (*Matter of Kellogg*, 35 AD2d 145, 148 [1970], *lv denied* 28 NY2d 481 [1971]).

In conclusion, we hold that the savings provision of the option clause allows the renewal option to be exercised after the

lease has expired, which renders the option clause of the lease violative of the remote vesting rule of EPTL 9-1.1 (b) under *Warren St. Assoc. v City Hall Tower Corp.* (202 AD2d 200 [1994], *supra*).

■ However, we reject plaintiff's claim under EPTL 9-1.1 (a) and the common-law rule against unreasonable restraints on alienation (*see Metropolitan Transp. Auth. v Bruken Realty Corp.*, 67 NY2d 156, 167 [1986]; *Buffalo Seminary v McCarthy*, 86 AD2d 435, 447-449 [1982], *affd on other grounds* 58 NY2d 867 [1983]). The renewal option clause does not directly restrain plaintiff from transferring its property (*see Buffalo Seminary*, 86 AD2d at 448). While in theory the options may constitute an indirect restraint on alienation, by reducing the rental value of the building's commercial space and correspondingly reducing the building's sales price, nothing in the existing record addresses the effect the options may have on the building's sales price, and accordingly there is no basis for finding any indirect restraint to be unreasonable (*see Buffalo Seminary*, 86 AD2d at 449).

Accordingly, the order of the Supreme Court, New York County (Carol Robinson Edmead, J.), entered August 6, 2008, which granted the motion by the Bleeker Jones defendants for summary judgment dismissing the complaint and denied plaintiff's cross motion for summary judgment, should be reversed, on the law, without costs, defendants' motion denied and plaintiff's cross motion granted to the extent of declaring that the renewal option clause of the lease is void under EPTL 9-1.1 (b) and that Bleeker Jones LLC and Bleecker Jones Leasing and their subtenants and/or assignees are month-to-month tenants.

GONZALEZ, P.J., MAZZARELLI, MOSKOWITZ AND RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered August 6, 2008, reversed, on the law, without costs, defendants' motion for summary judgment dismissing the complaint denied and plaintiff's cross motion for summary judgment granted to the extent of declaring that the renewal option clause of the lease is void under EPTL 9-1.1 (b) and that Bleeker Jones LLC and Bleecker Jones Leasing and their subtenants and/or assignees are month-to-month tenants.