**Gloria BAKER, Plaintiff,**

v.

**LATHAM SPARROWBUSH ASSOCIATES and Aaron Kozak, Defendants.**

**No. 91 Civ. 6673 (CBM).**

United States District Court, S.D. New York.

Sept. 11, 1992.

On Motion For Interlocutory Appeal Oct. 26, 1992.

994

OPINION

MOTLEY, District Judge.

Several pending motions now await the court's decision. Defendants move to dis- miss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and, in the alternative, for summary judgment under Rule 56. Plain- tiff opposes these motions and cross-moves for partial summary judgment on her sec- ond cause of action to recover the leasehold under New York law.

This case was last before the court on defendants' motion to dismiss for failure to state a claim on which relief may be grant- ed. In the court's opinion of March 23, 1992, 808 F.Supp. 981, familiarity with which is presumed, the court dismissed plaintiff's claims under 42 U.S.C. § 1983 and § 853 of the New York Real Property Actions and Proceedings Law (RPAPL) as barred by the statute of limitations. Also in this opinion, and by the court's order of the same date, the court granted plaintiff leave to amend the complaint to more spe- cifically plead any state law claims, plain- tiff having alleged diversity jurisdiction in the original complaint. Plaintiff subse- quently filed an amended complaint sepa- rately pleading her state law claims and repleading the § 1983 and RPAPL § 853 claims that were dismissed by the court's prior opinion. Plaintiff also submitted a letter to the court dated March 27, 1992, explaining her position that her repleading of the § 1983 and RPAPL § 853 claims was proper because the amended complaint in- cludes a new allegation that, if true, would toll the statute of limitations and render these claims timely.

## I. FACTS

Although the court will not now set forth the extensive factual background leading up to the present litigation, a brief review of the facts is necessary to clarify the issues raised in the motions presently be- fore the court.

Defendant Latham Sparrowbush Associ- ates ("LSA") is a limited partnership which owns a garden apartment complex known as Sparrowbush Apartments ("Sparrow- bush"). Defendant Aaron Kozak is a gen- eral partner of LSA. On August 28, 1968, LSA leased Sparrowbush to Shaker Es- tates, Inc. ("Shaker"), not a party to this

litigation, under a long term blanket lease for twenty-one years and three days with an option to extend the lease for two successive twenty-one year terms. On December 31, 1973, Cohoes Industrial Terminal ("CIT), a New York corporation, purchased Shaker's interest in the leasehold. Plaintiff's husband, Leon Baker, co-counsel to plaintiff in this litigation, is the president and sole shareholder of CIT. Plaintiff claims that CIT entered into the leasehold agreement as her nominee, and that she was the equitable owner of the leasehold, although defendants dispute this contention. Section 32.01 of the Sparrowbush lease granted LSA the option to terminate the lease at any time on sixty days notice and pay the tenant $ 350,000. On December 26, 1984, LSA notified CIT that it was exercising its option to terminate the lease. The next day, Leon Baker informed LSA of his opinion that the option in Section 32.01 of the lease was invalid under New York's Rule against Perpetuities.

The present litigation is the fourth in a series of court actions to determine the lessee's rights to the Sparrowbush leasehold. Plaintiff first brought suit in January of 1985 in Westchester Supreme Court to obtain a judgment declaring that Section 32.01 of the lease violates New York's Rule against Perpetuities (the "Westchester action"). The court dismissed plaintiff's complaint for lack of standing by order dated April 16, 1985, and this decision was affirmed on appeal. *Baker v. Latham Sparrowbush Assocs.*, 129 A.D.2d 667, 514 N.Y.S.2d 426 (2d Dep't 1987), *appeal denied*, 70 N.Y.2d 606, 519 N.Y.S.2d 1030, 514 N.E.2d 388 (1987).

On February 11, 1985, LSA commenced an action against CIT in the Supreme Court of the State of New York, Albany County, for specific performance of the termination clause in Section 32.01 of the lease (the "Albany action"). LSA served process on CIT by providing service on the Secretary of State pursuant to § 306 of the Business Corporation Law (BCL). CIT did not receive process from the Secretary of State because CIT's current address was not on

file with the Secretary of State at the time. CIT did receive actual notice of the action in time to defend by a copy of the summons and complaint which LSA attached to papers served on plaintiff in the Westchester action. CIT defaulted in the Albany action and Supreme Court Justice Kahn entered an order dated April 19, 1985 granting LSA's motion for a default judgment and directing CIT to deliver possession of Sparrowbush to LSA. Justice Kahn denied CIT's motion to vacate the default on May 21, 1985, and that order was affirmed in *Latham Sparrowbush Assocs. v. Cohoes Indus. Term., Inc.*, 114 A.D.2d 584, 494 N.Y.S.2d 195 (3d Dep't 1985), *appeal dism'd*, 67 N.Y.2d 736, 500 N.Y.S.2d 100, 490 N.E.2d 1226 (1986).

A third related action was commenced on April 28, 1986, in United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy action"). CIT filed a Chapter 11 petition to collaterally attack the default judgment in the Albany action. LSA moved pursuant to 11 U.S.C. § 362(d)(1) to lift the automatic stay to enable it to obtain possession of Sparrowbush. CIT cross-moved to have LSA and the receiver held in contempt of court for attempting to enforce the state court judgment in violation of the automatic stay, and for an order directing CIT to transfer legal title of the leasehold to Gloria Baker. Judge Schwartzberg granted LSA's motion and denied both of CIT's cross-motions. *In re Cohoes Indus. Term., Inc.*, 62 B.R. 369 (Bankr.S.D.N.Y.1986). The bankruptcy court's decision was affirmed by the district court in the Southern District of New York in *In re Cohoes Indus. Term., Inc.*, 70 B.R. 214 (S.D.N.Y.1987), which was affirmed by the Second Circuit in a unpublished summary order. *In re Cohoes Indus. Term. Inc.*, 831 F.2d 283 (2d Cir.1987).

At the heart of the present litigation is plaintiff's contention that the Albany default by which LSA obtained possession of Sparrowbush was unconstitutionally obtained.[1] The amended complaint alleges

---

**1.** In the court's opinion of March 23, 1992, the

court held that the doctrines of collateral estop-

that defendants availed themselves of the method of service permitted by § 306 with the knowledge that CIT would not receive service of process because defendants knew that the Secretary of State did not have the correct address on file for CIT. Plaintiff alleges that LSA knew CIT's correct address and could have readily effected personal service on CIT. Plaintiff also alleges that CIT knew that plaintiff claimed to own the leasehold and that CIT was acting as her nominee, yet failed to serve plaintiff or join her as a party.

## II. DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction.

### A. Plaintiff's § 1983 and RPAPL § 853 claims

Defendants first challenge plaintiff's attempt to replead her § 1983 and RPAPL § 853 claims as a transparent effort to avoid the court's prior decision dismissing these claims under the statute of limitations. Plaintiff responds that Rule 15(a) permits a party to amend the complaint without leave of court before the opposing party has filed a responsive pleading. Because a motion to dismiss the complaint is not a responsive pleading under F.R.C.P. 7(a), plaintiff contends that she could amend her § 1983 and RPAPL § 853 claims as of right notwithstanding the court's decision dismissing these claims.

■ The court finds plaintiff's position untenable. Rule 15(a) does not permit a party to file an amended complaint as of right after the court dismisses the complaint with prejudice on a Rule 12(b)(6) motion. *See Swan v. Board of Higher Educ.,* 319 F.2d 56, 60–61 (2d Cir.1963); *Salwen Paper Co., Profit Sharing Retirement Trust v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 79 F.R.D. 130, 133 (S.D.N.Y.1978); *Christophides v. Porco,* 289 F.Supp. 403, 408 (S.D.N.Y.1968); 3 Moore's Federal Practice, ¶ 15.07 at 15–36 (2d ed.1987) ("While Rule 15(a) literally gives the plaintiff an unlimited right to amend once as of course before a responsive pleading has been served, if the court has dismissed the complaint (on a Rule 12(b) motion, for example) before an answer has been served, the plaintiff may file an amended complaint only upon leave of court."). This court's order of March 23, 1992 specifically granted plaintiff leave to replead only her state law claims that were not specifically pled in the original complaint. Plaintiff did not obtain or request leave to amend the complaint with respect to the dismissed claims.[2] Plaintiff's repleading of these claims in the amended complaint was therefore improper.

■ Plaintiff's insertion of new contentions in the amended complaint to support her § 1983 and RPAPL § 853 claims constitutes an improper attempt to reargue the merits of this court's dismissal of these claims in its prior ruling. Plaintiff's purported factual allegations amending her § 1983 and RPAPL § 853 claims are actually arguments that were not previously made to the court in support of her position

---

pel and res judicata did not bar plaintiff from challenging the constitutionality of the default judgment in the present litigation.

**2.** Nor is it clear that the court would have granted a request for leave to amend plaintiff's § 1983 and § 853 claims to incorporate the allegations added here. Although leave to amend is to be liberally granted, *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), there is no reason to grant a plaintiff leave to amend a complaint where to do so would be merely a "rehash of the allegations in the original complaint." *Zerman v. E.F. Hutton & Co.,*

628 F.Supp. 1509, 1511 (S.D.N.Y.1986). The "facts" added to plaintiff's allegations in support of her dismissed claims were known by plaintiff prior to the time the court heard argument on the motion to dismiss the original complaint, *see Salwen Paper Co.,* 79 F.R.D. at 133, and were brought to the court's attention before the motion was decided. *See* Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint at 12–13, n. 5. Plaintiff's amendment of these claims constitutes a new legal argument that was not previously presented, rather than new factual material which would render plaintiff's claims legally sufficient.

that these claims are not time-barred. A court is justified in refusing to reconsider matters once resolved in a continuing proceeding under the doctrine of "the law of the case". Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478 at 788 (1981). The court's local rules set forth the procedures that a party must follow to seek reargument of a motion. *See* Civil Rule 3(j), Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (November, 1991). Plaintiff's repleading of these claims without following the procedures specified does not comply with these rules. Since plaintiff failed to follow the appropriate procedures, the issue of whether plaintiff's § 1983 and RPAPL § 853 claims as realleged in the amended complaint are time-barred is not properly before the court.

However, notwithstanding plaintiff's failure to raise the issue in compliance with procedural requirements, the court will nevertheless address the issue to put an end to the matter. The modified allegations in the amended complaint assert that plaintiff was unable to bring her § 1983 and RPAPL § 853 claims against defendants until the conclusion of the bankruptcy action. Plaintiff argues that the statute of limitations was tolled until 1991, when the entire bankruptcy proceeding terminated, and not merely, as the court ruled, until 1987 when that part of the bankruptcy action challenging the default judgment was conclusively determined and upheld on appeal. Plaintiff's new argument is that because the New York courts had ruled that plaintiff lacked standing to bring a declaratory judgment action to invalidate Section 32 of the lease, and because the bankruptcy court refused to permit CIT to assign its interest in the leasehold to plaintiff, which would have given plaintiff standing to assert her rights, plaintiff was therefore stayed from bringing the present action under CPLR § 204(a) until the date that she was finally able to obtain an assignment from CIT.

Plaintiff filed an action in the Supreme Court of Westchester County in early 1985, seeking a judgment declaring Section 32.01

of the lease invalid. By order dated June 20, 1985, the court granted the landlord's cross-motion to dismiss the complaint on the ground that plaintiff lacked standing to sue. This order was affirmed in *Baker v. Latham Sparrowbush Assocs.*, 129 A.D.2d 667, 514 N.Y.S.2d 426 (2d Dep't 1987). As the Second Department noted, Gloria Baker was not a party to the lease, and her allegation that CIT was merely her "nominee" was "unsubstantiated by any documentary proof or other written evidence in the record". *Baker*, 514 N.Y.S.2d at 427. The court further noted that in order for an agent to exercise its authority to perform or execute a contract to lease property for more than a year, the agent must have written authorization from the principal. *Id.* The court concluded that plaintiff had no standing to question the validity of a lease to which she is not a party.

CIT subsequently filed a petition in bankruptcy court in which it attempted to collaterally attack the default judgment obtained by LSA in the Albany action. At the same time, Gloria Baker moved for an order directing CIT to transfer its interest in the leasehold to her on the ground that she is the equitable owner of the lease and CIT is her mere nominee. The bankruptcy court denied this motion on the grounds that CIT had no title to transfer because a final state court order had already terminated its rights in the leasehold, and because such transfer would not be in the best interests of the estate since the lease termination payment would then accrue to Gloria Baker instead of CIT. *In re Cohoes Indus. Terminal*, 62 B.R. 369, 378–80 (Bankr.S.D.N.Y.1986), *aff'd*, 70 B.R. 214 (S.D.N.Y.1987), *affirmed*, 831 F.2d 283 (2d Cir.1987).

Plaintiff asserts, based on these two decisions, that the bankruptcy court's refusal to permit CIT to assign its rights in the leasehold to plaintiff effectively barred her from asserting her § 1983 and RPAPL § 853 rights. Plaintiff relies on CPLR § 204(a) as the legal basis for her argument that these facts tolled the statute of limitations for her § 1983 and RPAPL § 853 claims. This section provides that

"[w]here the commencement of an action has been stayed by a court or by a statutory prohibition, the duration of the stay is not part of the time within which the action must be commenced." Plaintiff argues that although the bankruptcy court's refusal to permit the assignment was not technically a stay, she should nevertheless receive the benefit of the tolling principal because the bankruptcy court's ruling rendered her unable to bring her § 1983 and RPAPL § 853 claims.

CPLR § 204(a) has been interpreted to apply to situations covered by the "spirit" of the rule even though not governed by the letter of statute. *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359, 366 (2d Dep't 1989). Accordingly, courts have construed § 204(a) to toll the statute of limitations during the period of time in which a plaintiff is disabled from bringing suit because of a statutory requirement that the plaintiff first obtain leave of court before filing suit. *See, e.g., Barchet v. New York City Transit Authority*, 20 N.Y.2d 1, 281 N.Y.S.2d 289, 228 N.E.2d 361 (1967) (statute of limitations tolled from the time plaintiff commenced proceeding to obtain leave of court to file a late notice of claim until the date when the court granted leave of court); *Wilson v. Motor Vehicles Accident Indemnification Corp.*, 44 Misc.2d 187, 253 N.Y.S.2d 265 (Sup.Ct. Spec.Term, Bronx Cty. Pt. 1 1964) (time during which court held in abeyance plaintiff's motion for leave to sue the corporation excluded from the limitations period). The tolling principal embodied in § 204(a)

has also been applied to exclude from the limitations period the time during which a valid cause of action had accrued but was temporarily extinguished as a result of an erroneous court order which was later reversed. *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359 (2d Dep't 1989).

■ Plaintiff's purported disability, however, is of a very different nature than those relied on to obtain the benefit of § 204(a) in the above cases. Plaintiff's alleged lack of standing without an assignment from CIT is not a disability resulting from a condition precedent to filing suit imposed by statute, nor is it a situation where plaintiff had a valid cause of action which was temporarily extinguished by an erroneous court ruling. Rather, if in fact, plaintiff lacked standing to file her § 1983 and RPAPL § 853 claims without an assignment from CIT then it was because she lacked a sufficient nexus to the subject matter of the litigation, not because of any court-imposed restraint or statutory prerequisite.[3]

A similar argument for applying § 204(a) was rejected in *Leigh v. McGuire*, 507 F.Supp. 458 (S.D.N.Y.1981) on more compelling facts than those present here. In *Leigh*, plaintiffs bringing a Section 1983 action opposed defendants' statute of limitations defense on the ground that they could not have successfully maintained their action within the prescribed time period because a criminal proceeding involving the same issue was pending in state court,

**3.** Whether a party has standing to bring an action under 42 U.S.C. § 1983 depends on her relationship to the subject matter of the litigation. *See, e.g., Park View Heights Corp. v. Black Jack*, 467 F.2d 1208 (8th Cir.1972) (in order to have standing to bring a § 1983 claim, plaintiff must show injury in fact); *Coggins v. Carpenter*, 468 F.Supp. 270 (E.D.Pa.1979) (a person has standing to assert a § 1983 claim if that person was aggrieved or injured by the allegedly wrongful conduct); *Black v. Beame*, 419 F.Supp. 599 (S.D.N.Y.1976), *aff'd*, 550 F.2d 815 (2d Cir. 1977) (standing to bring a § 1983 claim depends on whether the plaintiff suffered an injury in fact, whether the interest sought to be protected is within the zone of interests protected by the statute or constitutional guarantee in question, and whether there is a logical nexus between

plaintiff's status and the substantive claims raised); *Grier v. Specialized Skills, Inc.*, 326 F.Supp. 856 (W.D.N.C.1971) (to have standing to bring § 1983 claim, plaintiff must have a sufficient personal interest in the subject matter of the litigation); *cf. O'Malley v. Brierley*, 477 F.2d 785 (3d Cir.1973) (a litigant may only assert his own constitutional rights). Similarly, standing under § 853 of the New York Real Property Actions and Proceedings Law depends on whether the plaintiff is the real party in interest. *Cf. Novick v. Washington*, 110 Misc. 379, 176 N.Y.S. 387 (1919) (an action for forcible entry and detainer may only be brought by the person who had possession of the property, and not by one suing merely under a power of attorney from the real party in interest).

and a federal court would have abstained from hearing the action under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The plaintiffs in *Leigh* argued that the fact that the court would have abstained from their § 1983 action, although not technically a stay, should trigger the tolling principal of CPLR § 204(a). The court rejected this argument, holding that § 204(a) does not extend to situations where plaintiffs could not successfully maintain a cause of action because of a judicial doctrine such as abstention. *Leigh*, 507 F.Supp. at 460–61. The facts alleged by plaintiff in this case to invoke § 204(a) are much weaker than those present in *Leigh*. Unlike the situation in *Leigh*, plaintiff's alleged "disability" did not result from a judicial doctrine which would have prevented the court from hearing her claim due to the pendency of a related court proceeding. Assuming that plaintiff is correct in her argument that she would not have had standing to bring her § 1983 and RPAPL § 853 claims without the assignment from CIT, then she would have failed in her litigation for the sole reason that she was unable to convince a court that she had a sufficient relationship to the subject matter of the action she sought to bring. The fact that plaintiff, like any other litigant, would have had to demonstrate standing to succeed on her claim, and the fact that she may have encountered difficulties doing so given her attenuated relationship to the subject matter of the litigation, does not render her effectively "stayed" from bringing such a claim under § 204(a). *Cf. Ticon Corp. v. Emerson Radio & Phonograph Corp.*, 206 Misc. 727, 134 N.Y.S.2d 716 (Sup.Ct.Spec.Term.N.Y.Cty. Pt. I 1954) (fact that secret proof would be unavailable in action for breach of contract classified as confidential by the U.S. Army would not toll the statute of limitations under the CPLR).

Moreover, if, as plaintiff claims, she did not have standing to bring a § 1983 or RPAPL § 853 action without an assignment from CIT, then the claims belonged to CIT. The fact that plaintiff may not have had standing to bring these claims until receiving the assignment did not relieve CIT of its obligation to bring any claims that it had in a timely fashion. No court ever stayed CIT from bringing such actions, and no court ever ruled that CIT lacked standing to assert its rights in the leasehold. However, neither CIT nor plaintiff asserted a cause of action under § 1983 or RPAPL § 853 within the prescribed time period. At the time CIT assigned its rights in the leasehold to plaintiff on July 27, 1991, its § 1983 and RPAPL § 853 claims were already time-barred. Because CIT could not assign to plaintiff greater rights in the leasehold than it had itself, plaintiff's § 1983 and RPAPL § 853 claims are time-barred.

Notwithstanding plaintiff's unauthorized "amendments" to her previously dismissed § 1983 and RPAPL § 853 claims, the fact remains that these claims were commenced over four years after the default judgment against CIT was upheld by the Second Circuit in 1987. Plaintiff's § 1983 and RPAPL § 853 claims alleged in the amended complaint are therefore dismissed, once again, under the statute of limitations.

**B. Plaintiff's remaining state law claims**

The amended complaint also repleads plaintiff's state law claims pursuant to the court's order of March 23, 1992. Defendants challenge the sufficiency of the amended state law claims, arguing that they suffer from the same infirmities as in the original complaint. The court's prior opinion held that the original complaint did not fairly allege four state law claims, which plaintiff discussed for the first time in her memorandum of law in opposition to defendant's motion to dismiss. The original complaint listed only four causes of action under § 1983 and one cause of action under RPAPL § 853. The court ruled that plaintiff's discussion in her legal memoranda of nine causes of action, the five specified in the complaint plus four new state law causes of action, could not have been fairly anticipated from the original complaint. Defendants argue that other than separating plaintiff's state law claims from her § 1983 claims and adding an alle-

gation in the second cause of action that no adequate remedy at law exists, the amended complaint does not differ from the original complaint.

■ Defendants are correct that the amended complaint closely resembles the original complaint. However, the problem with original complaint was that the claims stated as a basis for relief only 42 U.S.C. § 1983 and § 853 of the New York Real Property Actions and Proceedings Law, and could not be fairly read to include any additional state law claims. The amended complaint cures this deficiency by separating out plaintiff's state law claims from her § 1983 claims. The Federal Rules of Civil Procedure do not require a plaintiff to specify the legal theory on which relief is sought, but only to put the opposing side on fair notice of the claims alleged. F.R.C.P. 8(a); *Siegelman v. Cunard White Star, Ltd.*, 221 F.2d 189, 196 (2d Cir.1955) The amended complaint is sufficient in this regard.

■ Defendants next contend that the amended complaint must be dismissed because under New York law, a plaintiff must first establish a legal right to the property before bringing the type of claims asserted here. Defendants cite a number of cases for the proposition that in order to be restored to the property from which the tenant was ousted or, in the alternative, to obtain restitution, New York law requires a tenant to first establish that the eviction was unlawful. *See Maracina v. Shirrmeister*, 105 A.D.2d 672, 482 N.Y.S.2d 14, 16 (1st Dep't 1984); *Dzubey v. Teachers' College*, 87 A.D.2d 783, 449 N.Y.S.2d 489 (1st Dep't 1982); *Golde Clothes Shop, Inc. v. Loew's Buffalo Theatres, Inc.*, 236 N.Y. 465, 141 N.E. 917 (1923); *Brandt v. DeKosenko*, 57 Misc.2d 574, 293 N.Y.S.2d 489, 490 (Sup.Ct.N.Y.County 1968). However, these cases merely hold that a tenant may be restored to the premises or recover damages after vacating the default judgment that was the basis for eviction. They do not support defendant's position that the tenant's legal right to the premises must be established in a separate proceeding before the tenant may seek a remedy for the wrongful ouster. In this case, the New York courts declined to vacate the default judgment against plaintiff on procedural grounds. Plaintiff now claims that the default judgment against CIT was unconstitutionally obtained and that even if constitutional, it is not binding on plaintiff. The cases cited by defendant do not prevent plaintiff from pursuing her state law claims.

C. Diversity jurisdiction

Defendants also urge dismissal for lack of subject matter jurisdiction on the grounds that diversity jurisdiction was collusively obtained. Plaintiff, a Florida resident, brings this action against defendants, a New York corporation and a New York resident, after having obtained an assignment from CIT, a New York corporation, of its rights to the leasehold. Defendants argue that the assignment was collusively obtained for the purpose of creating diversity jurisdiction in federal court. Defendants rely on 28 U.S.C. § 1359, which provides that jurisdiction does not exist where "any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

■ A party asserting diversity of citizenship as a basis for subject matter jurisdiction bears the burden of proof on that issue. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Where an allegation of collusion is raised, the plaintiff must prove that jurisdiction was properly obtained, and in determining the issue of collusion the court must examine the totality of the surrounding circumstances. *Horvitz v. Oconefsky*, 683 F.Supp. 959 (S.D.N.Y.), *aff'd without op.*, 868 F.2d 1267 (2d Cir.1988).

The Supreme Court applied 28 U.S.C. § 1359 to an assignment of rights to a diverse plaintiff in *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). In *Kramer*, a Panamanian corporation had assigned its contractual rights against a Haitian corporation to an attorney in the United States, who in turn agreed to pay the Panamanian corporation

95% of any amount obtained. The attorney had a "total lack of previous connection with the matter," *Kramer*, 394 U.S. at 827, 89 S.Ct. at 1490, 23 L.Ed.2d at 14, and the assignment was admittedly motivated in substantial part by a desire to obtain diversity jurisdiction. Under these circumstances, the Court held that the attorney was a mere front for the real party in interest and that the assignment was collusive under 28 U.S.C. § 1359.

The primary case on collusive assignments in the Second Circuit is *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469 (2d Cir.1976). In *Prudential Oil*, the court construed Section 1359 to invalidate diversity jurisdiction based on an assignment of a parent corporation's interest in a contract to its wholly-owned subsidiary. The court ruled that Section 1359 should be broadly construed in light of *Kramer*, and held that an inter-corporate assignment between a parent corporation and its wholly-owned subsidiary is presumptively ineffective for jurisdictional purposes. *Id.* at 474–75. This presumption may be rebutted by an offer of evidence that the assignment was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction. *Id.* at 476. In *Prudential Oil*, the subsidiary had been created for the sole purpose of prosecuting the assigned claim, and was engaged in no business other than prosecution of the claim. The court found no legitimate business purpose underlying the assignment and ruled that diversity jurisdiction was therefore defeated under 28 U.S.C. § 1359.

 Citing *Prudential Oil*, defendants argue that CIT's assignment of its rights to plaintiff shortly before commencement of this litigation creates a presumption of collusion and that plaintiff must prove a legitimate business purpose for the assignment to rebut this presumption. *Prudential Oil* recognized a presumption of collusiveness where a debt is assigned to a wholly-owned subsidiary whose only purpose is to obtain diversity jurisdiction and bring an action on the debt. Here, however, the assignment of rights was from plaintiff's purported nominee, a New York corporation, to plaintiff, who had claimed to be the real party in interest since at least 1974, and the assignment was for the facially valid business purpose of determining plaintiff's rights with respect to the leasehold. Affidavit in Opposition to Defendants' Motion for Summary Judgment, ¶¶ 8, 9 (incorporating Supplement I, p. 39–40); *see also Drexel Burnham Lambert Group, Inc. v. Galadari*, 610 F.Supp. 114, 117 (S.D.N.Y.), *aff'd in part and vacated in part*, 777 F.2d 877 (2d Cir.1985) (plaintiff carried its burden of demonstrating diversity where assignment of rights was by a legitimate, functioning subsidiary to its parent company for a facially valid business purpose and occurred six weeks after execution of the note sued upon, but seventeen months before filing of the lawsuit). Plaintiff sought to vindicate her rights in the leasehold over six years before the commencement of this lawsuit by bringing an action for a declaratory judgment in New York state court. Unlike the plaintiffs in *Kramer* and *Prudential Oil*, plaintiff in this case is not a mere shell entity or collection agent, but alleges that she has real interests at stake in the outcome of the litigation.[4]

---

**4.** Defendants argue that plaintiff is barred from now claiming that she is the real party in interest in this litigation by the doctrine of collateral estoppel. In *In re Cohoes Indus. Terminal*, 78 B.R. 681 (Bankr.S.D.N.Y.1987), the bankruptcy court rejected the debtor's argument that Gloria Baker, and not CIT, was the beneficial owner of the leasehold. CIT had argued that LSA's claims for waste, contingent rent and use and occupancy were misdirected against the debtor because Gloria Baker was the disclosed principal and beneficial owner of the leasehold. The court found that Gloria Baker was a mere figurehead and not the disclosed principal in ownership of the leasehold, *id.* at 690–92, and concluded that the debtor is liable to LSA for performance under the lease. *Id.* at 700–701. However, the court's ruling that Gloria Baker was not the disclosed principal in the leasehold does not now preclude plaintiff from asserting that she has actual interests in the present litigation for the purposes of determining diversity jurisdiction. Similarly, state court decisions holding that plaintiff lacked standing to bring an action on the leasehold, *Baker v. Latham Sparrowbush Assocs.*, 129 A.D.2d 667, 514 N.Y.S.2d 426 (2d Dep't), *appeal denied*, 70 N.Y.2d 606, 519 N.Y.S.2d 1030, 514 N.E.2d 388

Moreover, although the creation of diversity by assignment shortly before a diversity action is commenced may create a suspicion of collusiveness, *Mother Bertha Music, Inc. v. Trio Music Co.*, 717 F.Supp. 157, 159 (S.D.N.Y.1989), the circumstances surrounding this assignment do not support such an inference. Plaintiff had attempted to obtain an assignment from CIT since 1986, Compl. ¶ 20, at a time when plaintiff allegedly was a New York resident and could not have been motivated by jurisdictional considerations. Tr. 31.[5] However, plaintiff could not obtain an assignment from CIT by the bankruptcy court until 1991, after the bankruptcy proceeding had concluded. Under these circumstances, plaintiff's commencement of the present action shortly after obtaining the assignment does not support a finding of collusion.

### D. Motion to dismiss with respect to defendant Aaron Kozak

■ The amended complaint names Aaron Kozak, general partner of LSA, as an individual defendant on plaintiff's claims. Defendants move to dismiss Kozak as a defendant on the grounds that the amended complaint fails to state a claim against him individually. Under New York law, general partners have joint and several liability for torts committed by the partnership, but only joint liability for the contractual obligations of the partnership. N.Y. Partnership Law § 26 (McKinney 1988); *Meyer v. Park South Associates*, 159 A.D.2d 337, 552 N.Y.S.2d 614, 616 (1st Dep't 1990). Because plaintiff's § 1983 and RPAPL § 853 claims have been dismissed, the remaining claims in the amended complaint arise from the obligations of the partnership with respect to the lease. Actions on a lease are among the category of actions sounding in contract that give rise to only joint liability on individual partners. *Meyer*, 552 N.Y.S.2d at 616; *Helms-*

*ley v. Cohen*, 56 A.D.2d 519, 391 N.Y.S.2d 522, 523 (1st Dep't 1977); *Ryan v. Brohpy*, 755 F.Supp. 595, 598 (S.D.N.Y.1991).

■ It is clear under New York law that in order to state a claim against a general partner for actions arising from the contractual obligations of the partnership, a complaint must allege that the partnership is insolvent or is otherwise unable to pay its debts. *Rose v. Green*, 145 A.D.2d 618, 536 N.Y.S.2d 822, 825 (2d Dep't 1988); *Pine Plains Lumber Corp. v. Messina*, 78 A.D.2d 271, 435 N.Y.S.2d 381 (3d Dep't 1981); *Federal Home Loan Mortg. Corp. v. Dutch Lane Associates*, 775 F.Supp. 133, 140–41 (S.D.N.Y.1991); *Owen Steel Co., Inc. v. George A. Fuller Co.*, 563 F.Supp. 298 (S.D.N.Y.1983). Absent such an allegation, an action against an individual partner based on the contractual obligations of the partnership must be dismissed. *Meyer*, 552 N.Y.S.2d at 616; *Murphy v. Gutfreund*, 624 F.Supp. 444, 448 (S.D.N.Y.1985); *Helmsley*, 391 N.Y.S.2d at 523; *Friedman v. Gettner*, 7 N.Y.2d 764, 194 N.Y.S.2d 35, 163 N.E.2d 141 (1959).

Plaintiff urges the court to depart from this well-established rule and permit plaintiff's action on the lease to stand against Kozak despite plaintiff's failure to allege that the partnership is insolvent or unable to pay its debts. Plaintiff contends that the New York rule limiting the liability of general partners on contract claims originated as a rule governing the marshalling of assets to enforce a judgment, and developed into a rule of substantive liability only after courts allegedly misinterpreted Judge Weinfeld's opinion in *Wisnouse v. Telsey*, 367 F.Supp. 855 (S.D.N.Y.1973). *Wisnouse* held that resort could be had against an individual partner on a contract claim only if joint or partnership property was insufficient to pay the partnership's debts, or if

---

(1987), and denying plaintiff's attempt to obtain title to the leasehold through the imposition of a constructive trust, *Baker v. Latham Sparrowbush Assocs.*, 137 A.D.2d 934, 525 N.Y.S.2d 357 (3d Dep't 1988), do not have preclusive effect on the issue of whether plaintiff has collusively obtained diversity jurisdiction.

**5.** Citation to "Tr. ___" refers to pages of the transcript of the oral argument heard on June 26, 1992.

there appeared to be no effective remedy without resort to individual property. Later courts relied on *Wisnouse* to support their conclusion that a complaint that fails to allege that the partnership is insolvent or unable to pay its debts is insufficient under New York law to state a claim for breach of contract against an individual partner. *Cunard Line, Ltd. v. Abney*, 540 F.Supp. 657, 659–60 (S.D.N.Y.1982); *Rose*, 536 N.Y.S.2d at 835; *Helmsley*, 391 N.Y.S.2d at 523. Judge Knapp's holding to this effect in *Cunard* has been cited by the Second Circuit Court of Appeals as the law in New York. *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 243 (2d Cir.1989). Regardless of the original underpinnings of New York's rule on joint liability for partners on contract claims, it is now clearly the law in New York that a partner cannot be sued as an individual on a contract claim absent an allegation of the partnership's insolvency or inability to pay its debts. The court declines plaintiff's invitation to reinterpret this rule as merely governing the marshalling of assets once liability is established.

This court is bound to apply New York substantive law in determining the rights and obligations of the parties with respect to the leasehold, and New York's rule limiting the liability of individual partners on contract claims is clearly a substantive rule. Plaintiff's claims against Kozak individually are therefore dismissed.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the ground that plaintiff has produced no evidence that would support her claim that service on CIT under B.C.L. § 306 was unconstitutional as applied. Defendants assert that there is no genuine issue of material fact as to whether defendants knew that the address on file for CIT with the Secretary of State was incorrect.

The party seeking summary judgment has the burden of showing that there is an absence of evidence to support plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Defendants submitted affidavits from David Siegal, counsel to LSA in prior proceedings, and Aaron Kozak, general partner of LSA, to support their contention that defendants had no reason to believe that the address on file for CIT with the Secretary of State was incorrect. Affidavit of Aaron Kozak in Support of Motion for Summary Judgment, ¶¶ 9–13; Affidavit of David M. Siegal in Support of Motion for Summary Judgment, ¶ 3. Plaintiff argues that there is a genuine issue of fact as to the veracity of the Kozak and Siegal affidavits and alleges facts purporting to bear on the credibility of their affidavits. Affidavit in Opposition to Defendants' Motion for Summary Judgment, ¶¶ 1–9. Plaintiff also alleges that Kozak and Siegal knew the actual address of CIT and of plaintiff, and could have readily effected personal service. Affidavit in Opposition to Defendants' Motion for Summary Judgment, ¶ 10. Plaintiff seeks discovery to determine the extent of defendants' knowledge as to the likelihood that substitute service would reach CIT. Plaintiff contends that substitute service under BCL § 306 under the circumstances alleged does not comply with the requirements of due process law.

The court is unable to conclude at present that there is no genuine issue of material fact with respect to defendants' knowledge at the time they attempted substitute service on CIT. Moreover, even if the court were to find that no genuine issue of material fact exists with respect to this issue, the court would still be unable to grant summary judgment for defendants, as plaintiff contends that the default judgment is not binding on Gloria Baker, who was not a party to the action. There is a disputed issue of fact as to the question of whether Justice Kahn entered the default judgment transferring the leasehold to defendants "subject to the rights of Gloria Baker". Affidavit in Opposition to Defendants' Motion for Summary Judgment, ¶¶ 16–20. Defendants' motion for summary judgment is therefore denied.

## IV. PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment on her second cause of action to

recover the leasehold under New York law. Plaintiff contends that she does not need to prove that the default judgment against CIT was unconstitutionally obtained in order to succeed on this action because even if valid, the default is not binding on Gloria Baker.[6] Plaintiff therefore moves for summary judgment on the issue of whether Section 32.01 of the lease, which gives the landlord the option to terminate the lease and pay the tenant $350,000, is invalid under New York law. Unfortunately, this motion requires the court to determine, as a matter of first impression, whether New York's Rule Against Perpetuities applies to a landlord's option to terminate a long-term commercial lease for payment of a specified sum of money.

The facts relevant to the court's ruling on this issue are undisputed. On August 28, 1968, Latham Sparrowbush Corporation ("LSC"), as owner of Sparrowbush Apartments, entered into and executed a lease with Shaker Estates, Inc. ("Shaker") as tenant. LSC then deeded the property to LSA that same day. The lease was for an initial term of twenty-one years and three days and gave the tenant the right to extend it for two successive twenty-one year terms. Section 32.01 of the lease also gave the landlord the option to terminate the leasehold at any time and pay the tenant $350,000 in consideration for the surrender of the premises.[7] There is no limitation on when the landlord can exercise the option based on lives in being at the time the option was created. Shaker assigned its rights in the leasehold to CIT on December 31, 1973. On August 27, 1975, CIT and LSA entered into an Amendment of Lease providing for different rental terms than provided in the original lease. The Amendment of Lease stated that, except as amended, "[t]he lease shall continue in full force and effect and unchanged."

Defendant LSA, as successor to LSC, relied on Section 32.01 of the lease to procure the default judgment against CIT in the Albany action and obtain possession of the leasehold through a court-appointed receiver.[8] LSA gave notice to CIT by letter dated December 26, 1984, purporting to exercise its option to reacquire the leasehold under Section 32.01. The letter stated that the termination would take effect on February 25, 1985, sixty days from the date of the notice. Leon Baker responded by letter stating that the attempted exercise of the option was ineffective because it violates New York's Rule Against Perpetuities. LSA subsequently obtained a default judgment against CIT in the manner set forth above and obtained possession of the Sparrowbush property.

■ Remarkably, no reported cases have yet decided the issue of whether a landlord's option to terminate or purchase a lease is subject to New York's Rule Against Perpetuities. *See Omath Holding Co. v. New York*, 149 A.D.2d 179, 545 N.Y.S.2d 557 (1st Dep't 1989) ("no New York case has applied the Rule [Against Perpetuities] to leases and it is unnecessary to do so here."). In fact, neither party has brought to the court's attention a case from any jurisdiction that decides whether a landlord's right to acquire the leasehold violates the common law Rule Against Per-

---

6. The effect of the default on Gloria Baker, and the effect of prior court decisions that have addressed Gloria Baker's interest in the Sparrowbush leasehold, are disputed issues which the court need not resolve to decide the validity of the lease under New York law.

7. This section provides:
 The Landlord reserves the right to terminate or receive an assignment of this lease and the term hereof, upon giving sixty (60) days notice in writing to the Tenant of Landlord's intention so to terminate the lease and the lease shall cease, determine and end at the expiration of sixty (60) days from the day when such notice is given. The landlord shall

pay to the tenant as the consideration for the surrender of the demised premises, the sum of $350,000.00 in cash or certified check to the order of the tenant, drawn on a bank which is a member of the New York clearing house or upon such other terms as shall be requested, at the option of the Lessee. Appropriate adjustments with regard to the pre-paid rent, insurance, fuel, and supplied [sic] etc. will be made between the parties upon the date that the lease is terminated.

8. Plaintiff was not joined in the action or named as a party and plaintiff's attempt to intervene in the action was unsuccessful.

petuities. Since no controlling authority exists under New York law, the court must attempt to determine how the New York courts would decide the issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

New York had no restriction on remote vesting analogous to the common law Rule Against Perpetuities from 1830 to 1965. *Buffalo Seminary v. McCarthy*, 86 A.D.2d 435, 451 N.Y.S.2d 457, 461 (4th Dep't 1982), *aff'd*, 58 N.Y.2d 867, 460 N.Y.S.2d 528, 447 N.E.2d 76 (1983). In 1965, the New York legislature reinstated the common law Rule Against Perpetuities, which is now set forth in Section 9–1.1(b) of New York Estates, Powers and Trusts Law (EPTL). This section provides:

> No estate in property shall be valid unless it must vest, if at all, no later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved. In no case shall lives measuring the permissible period of vesting be so designated or so numerous as to make proof of their end unreasonably difficult.

EPTL § 9–1.1(b) was intended to codify the common law Rule Against Perpetuities. *Buffalo Seminary*, 451 N.Y.S.2d at 461.

Plaintiff claims that the issue of whether the Rule Against Perpetuities applies to options to purchase an interest in real estate has already been decided by the New York courts in the case of *Buffalo Seminary v. McCarthy*, 86 A.D.2d 435, 451 N.Y.S.2d 457 (4th Dep't 1982), *affirmed*, 58 N.Y.2d 867, 460 N.Y.S.2d 528, 447 N.E.2d 76 (1983). In *Buffalo Seminary*, the plaintiffs sought specific performance of an option giving them the right to purchase a specified portion of an adjacent parcel of residential land owned by the defendants. The option provided that the price of the area to be purchased would be determined based on its fair market value at the time of purchase, and would be set by appraisers in the event that the parties could not agree on the fair market value. There was no limitation on the time period during which the option could be exercised, and

the option was binding on the "heirs, executors, administrators, successors and assigns" of the parties. *Id.* at 459. The court held that the option was invalid under § 9–1.1(b). In reaching this result, the court cited a line of cases in other jurisdictions that had applied the rule against remote vesting to unlimited options, and noted that these cases had relied on the early English case of *London & South Western Railway Co. v. Gomm* (20 Ch.D. 562). *Gomm* held that because an unlimited option to purchase is substantially similarly to a conditional limitation (also known as an executory interest), which is within the Rule Against Perpetuities, an option to purchase should also be subject to the Rule. As the *Gomm* court stated, "There is in each case the same fetter on the estate and on the owners of the estate for all time." (*Gomm*, 20 Ch.D. at 582).

Contrary to plaintiff's assertions, however, *Buffalo Seminary* is not dispositive of the issue now before the court. The option held invalid in *Buffalo Seminary* was an unlimited option to purchase property in fee simple. The effect on the alienability of property subject to an unlimited option to purchase in fee simple is very different from that of an option to terminate a lease. In fact, the *Buffalo Seminary* court specifically distinguished options appendant to leases, noting that such options "have been held not to be subject to the rule against perpetuities". *Buffalo Seminary*, 451 N.Y.S.2d at 461, n. 5. After a subsequent inconclusive discussion of whether the option in question met the definition of an independent option, the court reiterated that "[t]he important point with regard to this issue is that the option is not part of a lease." *Id.* at 461–62, n. 5. As Plaintiff points out, the court's statement that options appendant to leases have been held not to be subject to the Rule Against Perpetuities refers to options to purchase the property held by a tenant, rather than options held by a landlord, as courts have not addressed the Rule's applicability to a landlord's option to purchase the remaining term of the lease. Nevertheless, the court's statements clearly demonstrate that the holding in *Buffalo Seminary* was not

intended to encompass options in a lease reserving in the grantor the right to terminate the lease.

In order to determine whether the court's holding in *Buffalo Seminary* should be extended to include a landlord's option to terminate a lease, the court must first attempt to characterize the nature of the interest retained by the grantor in such an option. Defendants argue that the interest created is either a right of reacquisition or, more probably, a reversion. Plaintiff takes the position that the option is a shifting executory interest retained in the grantor. Reconciling these two positions requires the court to navigate the technical and formalistic currents of future interest law.[9]

The Rule Against Perpetuities is not directed against vested interests. J. Gray, The Rule Against Perpetuities § 205 at 194 (4th ed. 1942); L. Simes & A. Smith, The Law of Future Interests § 1232 (2d ed. 1956) (hereinafter, Simes & Smith). Whereas reversions and rights of reacquisitions are deemed vested, executory interests are not.[10] Since the Rule Against Perpetuities only applies to property interests which are not vested, a characterization of the interest in question is essential to the court's analysis.

Defendants claim that LSC's option to terminate the lease could be construed as a right of reacquisition because the lease seemingly created in the tenant an estate for years subject to a condition subsequent. A right of reacquisition is "the future estate left in the creator or in his successors in interest upon the simultaneous creation of an estate on a condition subsequent." [11] EPTL § 6–4.6. The Second Restatement of Property defines a tenancy subject to a condition subsequent as "[a] tenancy terminable at the option of one of the parties to the lease on the occurrence of an event." Rest.2d of Prop. § 1.7, Comment (e) (1977). Defendants argue that the giving of notice or payment of a sum of money could be regarded as conditions subsequent, as they are events which would terminate the tenancy.

More likely, defendants maintain, the provision created a tenancy subject to a conditional limitation with a reversion in the landlord. A reversion is "the future estate, other than a possibility of reverter and a right of reacquisition, left in the creator or in his successors in interest upon the simultaneous creation of one or more lesser estates than the creator owned." EPTL § 6–4.4. The interest retained by LSA in Section 32.01 of the lease could not

9. Defendants urge the court to avoid further inquiry into the matter by treating the option granted to the landlord in Section 32.01 of the lease as solely an option to terminate the lease, citing authority that options to terminate do not come within the Rule Against Perpetuities. *See, e.g.,* 5A R. Powell, The Law of Real Property ¶ 769[2] at 72–72 (1992). To the extent that the option includes both the right to purchase and the right to terminate the leasehold, defendants ask the court to sever the purchase prong from the termination prong and give effect to the valid right to terminate. The court views the purchase and termination prongs in Section 32.01 as inseparable. It was clearly not the intention of the parties to grant the landlord the right to terminate the lease without payment of the $350,000, nor was it their intention to create in the landlord the power to "purchase" the leasehold without terminating the lease. The mere depiction of the right created as an option to terminate or an option to purchase does not change the substance of the option or determine its validity. The court uses the phrase "option to terminate" to refer to the option with the understanding that the right to terminate neces-

sarily encompasses the obligation to, in effect, purchase the remaining term of the lease for the sum of $350,000.

10. Professor Gray has described vested interests as follows:

A vested future estate is one which is prevented from coming into possession only by the existence of some previous estate or estates; it is an estate which is ready to come into possession in whatever way and at whatever time the preceding estate or estates determine.

J. Gray, The Rule Against Perpetuities § 794 at 725 (4th ed. 1944). An executory estate, on the other hand, is "one which will not become a present estate until something, other than the termination of a previous estate or estates, occurs." *Id.* at § 795 at 725. Executory estates are therefore regarded as the opposite of vested estates. *Id.* at § 801 at 727.

11. Such an estate was traditionally termed "a right of entry for condition broken," a "power of termination", or a "possibility of forfeiture". Glasser, Practice Commentary to EPTL § 6–4.6 at 84 (McKinney 1967).

be a possibility of reverter because a possibility of reverter may only follow a fee simple determinable and not an estate for years. Glasser, Practice Commentary to EPTL § 6–4.5 (McKinney 1967). Therefore, defendants argue, under New York law an estate retained by the grantor following a tenancy subject to a conditional limitation must be a reversion. Glasser, Practice Commentary to EPTL § 6–4.4 (McKinney 1967).

Although plaintiff agrees that LSA had a reversion following the expiration of the initial term of the lease and any extensions of the lease, plaintiff states that LSA also had a contingent interest permitting it to enlarge its reversion by acquiring the unexpired portion of the lease. This contingent interest, plaintiff contends, is not vested because it is not certain to occur at the time the interest was created. Therefore, plaintiff concludes, citing *Buffalo Seminary* and *Gomm,* LSA retained an executory interest under the common law, which is subject to the Rule Against Perpetuities.

▪▪▪ The court concludes that plaintiff's characterization of LSA's interest as an executory interest is incorrect. An executory interest can only be held by a transferee, not by the creator of the estate or the creator's successor in interest. Simes & Smith, § 226 at 257 ("The important restriction as to the person who may take an executory interest is that the person must be some one other than the creator of the interest.... [T]here can be no executory interest in the grantor."). Plaintiff's reliance on *Buffalo Seminary* to support its characterization of an option to repurchase an interest in land retained by the grantor as an executory interest is misplaced. As defendants point out, the court in *Buffalo Seminary* did not hold that such an option was an executory interest. Rather, it held that the Rule Against

Perpetuities encompasses an unlimited option to purchase in fee simple because such an option is offensive to the Rule for the same reason that executory interests are offensive to the Rule, namely that it fetters the property and contravenes New York's policy of free alienation of the land.[12] *Buffalo Seminary* therefore does not support plaintiff's position that a landlord's option to terminate a lease is an executory interest.

Rather than an executory interest, the court finds that the option retained by the landlord to acquire the remaining term of years under the lease is a reversionary interest. Before LSC executed the lease agreement, it owned a fee simple absolute. By the lease, LSC conveyed to Shaker an estate for a term of years. The term of years was initially for twenty-one years and three days, and thereafter renewable by the tenant for two successive twenty-one year periods. At the latest, the landlord had the absolute right to possession after sixty-three years and three days. LSC therefore had a reversion in fee simple absolute. LSC therefore had a future interest in the estate.[13] Under New York law, there are three future interests which may be left in the creator: reversions, possibilities of reverter and rights of reacquisition. EPTL § 6–3.2(a)(1). Each of these three estates is deemed vested under the common law. 5A R. Powell, The Law of Real Property ¶ 769 (1992); Glasser, Practice Commentary to EPTL § 6–4.4 at 79 (McKinney 1967).

▪▪▪ The type of future interest retained by LSA depends on the type of estate that the lease created in Shaker. Taking into account LSA's right to terminate the lease, Shaker had a term of years subject to its interest being defeated upon LSC's exercise of the termination clause.

---

**12.** *See Buffalo Seminary,* 451 N.Y.S.2d at 462 ("The *Gomm* court concluded that since an unlimited option to purchase is substantially the same as a conditional limitation [also known as an executory interest], which is within the rule, it should therefore be subject to the rule against remoteness in vesting, stating: 'There is in each case the same fetter on the estate and on the owners of the estate for all time'.") (quoting

*London & South Western Ry. Co. v. Gomm, supra,* p. 582).

**13.** A future interest is defined under New York law as "an estate limited to commence in possession at a future time ... on determination, by lapse of time or otherwise, of a precedent estate created at the same time." EPTL § 6–4.2.

Section 32.01 of the lease therefore created a conditional limitation[14] on plaintiff's tenancy for years. In the case of a conditional limitation on a tenancy, the lease automatically expires upon the occurrence of the limitation.[15] 89 N.Y.Jur.2d Real Property—Possessory and Related Actions § 15 (1991); *see also Childs Co. v. Burke,* 110 Misc. 103, 104, 180 N.Y.S. 919, 920 (1920) (a conditional limitation may be created and the tenancy terminated upon the expiration of time after giving the requisite notice); *A.Z.A. Realty Corp. v. Harrigan's Cafe, Inc.,* 113 Misc. 141, 185 N.Y.S. 212 (N.Y.City Mun.Ct.1920) (same). The lease in this case would automatically expire at the end of the sixty day notice period if LSA exercised its option to terminate the lease. Assuming that Shaker, and then CIT on assignment from Shaker, had a tenancy for years on conditional limitation, LSA was left with a reversion. *See* Glasser, Practice Commentary to EPTL § 6–4.4 at 77 (McKinney 1967). The fact that LSA's exercise of the option to terminate the lease would increase its reversion does not change the classification of LSA's interest as a reversion for purposes of the Rule. *See* Abbott, *Leases and the Rule Against Perpetuities,* 27 Yale L.J. 878, 891 (1918) ("Since the reversion after a term of years, no matter how long, is a vested estate, conditions are valid which accelerate that vested estate, even though they are contingent and not certain to take effect or fall within the period of the rule [against perpetuities].''); J. Gray, The Rule Against Perpetuities § 113 at 102 ("All reversions are vested interests. From their nature they are always ready to take effect in possession whenever and however the preceding estates determine.''). As a vested reversion, the landlord's interest created by the option is not subject to the Rule Against Perpetuities.[16]

█ The primary authority relied on by plaintiff to demonstrate that a landlord's option to terminate a lease and pay the tenant a specified sum of money is subject to the Rule Against Perpetuities is comment (a) to § 394 of the Restatement of Property. Section 394, titled "OPTION TO REPURCHASE RESERVED IN FAVOR OF THE CONVEYOR," provides as follows:

> Subject to the exceptions stated in §§ 373 (destructible interest), 397 (charity) and 400 (unissued shares of a corporation), the reservation of an option to repurchase the whole or any part of the interest conveyed, made in favor of the conveyor, is invalid, because of the rule against perpetuities, when, under the language and circumstances of the reservation, such option (a) may continue for a period longer than the maximum period described in § 374; and (b) would create an interest in land or in some unique thing other than land, but for the rule against perpetuities.

**14.** Although the term "conditional limitation" may be used synonymously with the term "executory interest", *see* Simes & Smith, *The Law of Future Interests* § 221 at 249 (2d ed. 1956), it may also refer to the qualification of a tenant's term of years. *See generally* American Law of Property § 3.89 (Casner ed. 1952). It is this later use of the term that the court refers to here.

**15.** The Restatement (Second) of Property, Landlord and Tenant, § 1.7, comment (d) (1977) uses the term "determinable tenancy," to describe "a tenancy that automatically terminates on the occurrence of an event." The Restatement's example of a determinable tenancy for years closely resembles the lease in this case:

> 4. L leases a residence to T for two years, the lease to begin immediately. The lease provides that 'notwithstanding any provision of this lease to the contrary, the lease is termina-ble on any date that L notifies T that the lease is terminated and no such right of termination is vested in T.' The lease creates a determinable tenancy for years, terminable at the will of L. The lease will also terminate without notice by either party at the end of the two year period.

Rest.2d of Prop. § 1.6, comment (g).

**16.** *See* Casner & Leach, Cases & Text on Property at 339 (3d ed. 1984) ("A reversionary interest is what remains in a transferor who owns a vested interest and has made a transfer that does not exhaust the transferor's interest in the property transferred, so that an interest in the transferred property may return to the transferor at some future date. If the interest the transferor had in the transferred property before the transfer was not subject to the rule against perpetuities because it was vested, the reversionary interest is equally protected from the rule against perpetuities.")

Comment (a) to § 394 applies this section to options to repurchase a lease, stating:

> When such an option to repurchase is reserved by the conveyor of an estate for years in excess of twenty-one years an additional reason for the rule here stated exists. The permitting of such an option would decrease the likelihood of the lessee making the investments in structures on the leased premises normally contemplated by the parties to a long term lease.

Comment (a) to § 394 therefore would subject a landlord's option to repurchase a lease to the requirements of the Rule Against Perpetuities.

Although the principles set forth in the Restatement of Property would generally be given significant weight in the court's interpretation of a common law principle such as the Rule Against Perpetuities, the court does not find comment (a) to § 394 of the Restatement to be particularly helpful in this case. Volume IV of the Second Restatement of Property which contains § 394 was published in 1944. The above statement in comment (a) has never been followed or cited by any case, nor has it ever been discussed or mentioned by any commentator. Furthermore, neither party has brought to the court's attention any case that applied or discussed this principal before the Restatement was published. In the few instances where § 394 is mentioned by commentators, any reference to comment (a) or its application to a landlord's option to purchase a lease is conspicuously absent. Professor Richard Powell, the reporter for the First Restatement, mentioned § 394 in his treatise on property law only as a footnote to the statement that "[o]ptions to purchase or repurchase land, unconnected with a lease, have generally been held bad under the common-law rule against perpetuities, when not restricted in duration so as to comply with the permissible period under that rule." 5A R. Powell, The Law of Real Property ¶ 771[2], at 72–91, n. 22. Comment (a) is not mentioned by Professor Powell. Nor do any of the authorities cited by plaintiff apply § 394 to leases.

Perhaps most conspicuous is the absence of the principle stated in comment (a) from the Second Restatement of Property. The Second Restatement focuses in detail on leases and Landlord and Tenant Law.[17] The only mention of the Rule Against Perpetuities in the Second Restatement appears in § 1.8, comment (b), which discusses the applicability of the Rule to a lease in which the tenant is entitled to possession only upon the occurrence of an event which is not certain to occur.[18] Moreover, although the Second Restatement discusses in depth the termination of leases, the Rule Against Perpetuities is not mentioned in connection with the termination of a lease.[19] The Second Restatement's failure

---

17. The Reporter's note to Division II in the First Restatement of Property mentions that it does not include detailed treatment of the estate for years which would instead be undertaken in a subsequent Restatement on Landlord and Tenant Law. Rest. of Prop., vol. 1, at 37–38 (1936).

18. Section 1.8, comment (b), of the Second Restatement of Property provides:
 *Rule Against Perpetuities.* If the tenant is not entitled to possession until the occurrence of an event, he may not have a vested interest. If the tenant's interest is not vested and is not certain to vest, if it ever vests, within the period of the governing rule against perpetuities, the lease is void. The tenant's interest will always be vested if the stipulated event is certain to occur, even though the time of its occurrence cannot be reduced to a calendar date. The tenant's interest will be contingent and subject to the governing rule against perpetuities whenever the event stipulated might never occur. However, in this case (an event not certain to occur), it is presumed that the parties intend that the lease is not to commence if such an event does not occur within a reasonable time. If it appears from the circumstances that a reasonable time must be within the period of the governing rule against perpetuities, the rule will not apply and the lease will be valid if the event occurs within that time.

19. Section 1.7 of the Second Restatement provides that, "[a] landlord-tenant relationship may be terminable on the occurrence of an event." Comment (a) to § 1.7 construes this to include an event which "gives a party the option to terminate the tenancy by notice to the other party." Comment (b) to § 1.7 states that, "[i]f the event is totally within the control of the landlord or the tenant, but not both, so that at the will of one only the tenancy can be terminated, the tenancy is not a tenancy at will."

to raise the possibility of a perpetuities violation under a termination clause despite its thorough consideration of termination provisions and its specific focus on landlord and tenant law strongly suggests that comment (a) to § 394 in the First Restatement is not an established principle under the common law.

■ The court's conclusion that a landlord's option to terminate a long-term commercial lease for payment of a specified sum of money is not subject to the Rule Against Perpetuities comports with the history and purposes of the Rule. The Rule Against Perpetuities originated in 1682 in the *Duke of Norfolk's Case*, 3 Ch.Cas. 1 (1682). The Rule was developed to defeat otherwise indestructible executory interests that could perpetually fetter the land and inhibit its full development. Simes & Smith, § 34 at 38. Historically, reversionary interests left in the creator have been excluded from the operation of the Rule. *See* 5A R. Powell, The Law of Real Property ¶ 769[1] (1992).

The New York Court of Appeals recently examined the history and purposes of the Rule Against Perpetuities in the context of commercial transactions involving preemptive rights, or rights of first refusal, holding that the Rule did not apply to such rights. *Wildenstein & Co., Inc. v. Wallis*, 79 N.Y.2d 641, 584 N.Y.S.2d 753, 595 N.E.2d 828 (1992). Although the holding in *Wildenstein* does not govern the present case, the court's reasoning is instructive. After noting the commercial context of the dispute, the Court stated:

> That the principles of the 1682 *Duke of Norfolk's Case* (3 Ch.Cas. 1) should emerge to dominate this modern commercial transaction is a royal irony that does not serve the common law policy designed to block long-term retention over property by long-gone ancestors.

The court then proceeded to examine the historical underpinnings of the Rule:

> The rule against remote vesting originated in the late 17th century to address donative transfers of land among family members. By curbing attempts by the landed gentry to control future generations' ownership of their real property, the rule protected the public's interest in the development of land and prevented undue concentrations of wealth and power. [citations omitted] Although the limits imposed by the rule upon the power to control future ownership of property stem from a policy against the withdrawal of property from commerce, the rule against remote vesting struck a balance in allowing property owners to provide for family members they personally knew and those within the first generation after that class. *Id.*

Applying the policies behind the Rule Against Perpetuities to the preemptive rights in question, the court found that the application of the rule against remote vesting in such a context would not serve the Rule's policies. The court reasoned:

> Application of the rule to invalidate rights such as rights of first refusal has been found to defeat the legitimate expectations of the holder of the rights to the advantage of the other party who expressly agreed to the limitations.
>
> ... Thus, courts have recognized that the important commercial interests served by upholding preemptive rights, which only minimally affect alienability, outweigh the purpose underlying the rule against remote vesting.... [citations omitted] *Id.*

Similarly, in *Metropolitan Transp. Authority v. Bruken Realty Corp.*, 67 N.Y.2d 156, 501 N.Y.S.2d 306, 492 N.E.2d 379 (1986), the court held that the Rule Against Perpetuities did not apply to preemptive rights in commercial and governmental transactions, emphasizing that application of the rule would "invalidate an agreement which promoted the use and development of the property." *Metropolitan Transp. Authority*, 67 N.Y.2d at 166, 168, 501 N.Y.S.2d 306, 492 N.E.2d 379.

■ As these two recent cases in the New York Court of Appeals indicate, the

---

Rather, as Comment (g) to § 1.6 points out, it is "an estate for years determinable" if the option is engrafted on what would otherwise be an estate for years.

legitimate expectations of the parties and the commercial worth of the restriction on the property are legitimate factors to be considered in determining the applicability of the Rule Against Perpetuities. In this case, a landlord's option to terminate a long-term commercial lease upon payment of a specified sum of money does not precipitate the evils which the rule against remote vesting was designed to address. Section 32.01 of the lease encourages the property owner to make the most economically efficient use of the property. If the landlord can use the property in such a manner as to make it economically preferable to pay the tenant $350,000 and terminate the lease, he has the right to do so. Far from inhibiting development of the land, the provision actually promotes the most efficient use of the property from the perspective of the landowner. This is a very different situation from restrictions that impede future generations' ownership of their property and effectively withdraw the property from commerce.

 It is true, as plaintiff points out, that under the lease the tenant does not have an incentive to make improvements on the property that would render possession of the property for the remaining term of the lease more valuable than the sum of money for which the landlord may terminate the lease. However, the tenant is made aware of this incentive structure upon entering into the lease and can adjust the amount she is willing to pay for the lease and invest in the property accordingly. Moreover, improvements to property undertaken by a tenant are not necessarily encouraged under New York law. At common law, a tenant does not have the right to alter the property, even where such alteration would increase the value of the property. *Two Guys from Harrison—New York Inc. v. S.F.R. Realty Associates,* 63 N.Y.2d 396, 400, 482 N.Y.S.2d 465, 466, 472 N.E.2d 315, 316 (1984). Under New York statutory law, a tenant may only make improvements on the property if the tenant first obtains court approval, and court approval will only be granted if the lease does not prohibit the making of the improvement. RPAPL

§ 803(1)(c); *Two Guys from Harrison,* 63 N.Y.2d at 399, 482 N.Y.S.2d at 466, 472 N.E.2d at 316. Because New York allows the landlord to prevent a commercial tenant from alienating the leasehold and from making improvements, a landlord's option to terminate a lease does not defeat New York public policy.

In conveying a term of years under the lease, the grantor, LSC, retained an unconveyed residuary of the grantor's original fee. Based on the reversionary nature of the interest retained and the policies served by the Rule Against Perpetuities, the court concludes that the landlord's option to increase its reversion by terminating the lease with payment of a specified sum of money is not subject to the Rule Against Perpetuities. Plaintiff's motion for partial summary judgment on her second cause of action is denied.

Defendants' motion to dismiss plaintiff's claims under 42 U.S.C. § 1983 and RPAPL § 853 is granted. Defendants' motion to dismiss plaintiff's remaining state law claims is denied. Defendants' motion to dismiss the complaint with respect to defendant Aaron Kozak is granted. Defendants' motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment is denied.

## ON MOTION FOR INTERLOCUTORY APPEAL

Plaintiffs have moved under 28 U.S.C. § 1292(b) for a modification of this court's order of September 11, 1992, so as to allow an interlocutory appeal from the portion of that order denying plaintiff's motion for summary judgment on the issue of the applicability of the Rule against Perpetuities to a landlord's option to repurchase a leasehold. For the following reasons that motion is granted.

28 U.S.C. § 1292(b) permits a district judge to certify an interlocutory appeal if there is involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation."

 "Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed." *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119 (2d Cir.), cert. denied 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1966). In the instant controversy, it appears that unless an interlocutory appeal is allowed, a death knell will toll for plaintiffs cause of action.

To qualify, plaintiff must show that (a) there is a controlling question of law, (b) a substantial ground for difference of opinion, and (c) that the ultimate termination of the litigation may be advanced substantially.

Defendants here, citing this court's recent decision in *Shipping Corp. of India v. American Bureau of Shipping,* 752 F.Supp. 173 (S.D.N.Y.1990), argue that in order for a question of law to be deemed "controlling" it must affect a wide spectrum of cases. Defendants' assertion is incorrect. In *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 24 (2d Cir.1990) this Circuit expressly disagreed with the instant defendants' construction of the "controlling law" requirement.

The *Klinghoffer* court further held that for a question to involve "substantial grounds for difference of opinion" it is enough if the issues are "difficult and of first impression." 921 F.2d at 25. Clearly, the instant controversy satisfies that criterion.

As to the third prong, this court agrees that determination of the question of law involved would significantly advance the ultimate termination of the lawsuit. If this court's decision is affirmed, then the continuance of the litigation may cease as the plaintiff's remaining claims may not be worth pursuing economically. To proceed with plaintiff's remaining claims may not be a wise use of scarce judicial resources since affirmation would probably end the case. Thus decision now on the Rule Against Perpetuities question may materi-

ally advance termination of the instant case one way or another.